DAVID NORMAN HUMMER AND CYNTHIA WAX HUMMER, PLAINTIFFS v. PULLEY, WATSON, KING & LISCHER, P.A., TRACY K. LISCHER, INDIVIDUALLY AND AS AGENT OF PULLEY, WATSON, KING & LISCHER, P.A., DEFENDANTS AND THIRD-PARTY PLAINTIFFS v. WILLIE D. GILBERT, II, P.A. AND WILLIE D. GILBERT, II, THIRD-PARTY DEFENDANTS

No. COA99-1046

(Filed 17 October 2000)

## 1. Appeal and Error— appealability—grant of partial summary judgment—Rule 11 sanctions

Although the parties improperly attempted to stipulate that the parties wished to proceed with these appeals even though plaintiffs and third-party defendants contend the appeals of an order allowing partial summary judgment and an order granting Rule 11 sanctions against defendants and their counsel are interlocutory, the Court of Appeals will hear appeals from both orders because: (1) an order imposing sanctions on counsel, or any other non-party to the underlying action, may immediately be appealed

HUMMER v. PULLEY, WATSON, KING & LISCHER, P.A.

[140 N.C. App. 270 (2000)]

as a final order; (2) even though defense counsel failed to name themselves in the body of the notice of appeal, it is a procedural rather than a jurisdictional error, and defense counsel achieved the functional equivalent of naming themselves as appellants by signing the notice of appeal; (3) defendants' appeal from the sanctions order will be heard since the same facts are involved in both appeals by defendants and their counsel; and (4) defendants' appeal from the partial summary judgment order will be heard since the determination of the propriety of sanctions cannot be separated from the trial court's grant of partial summary judgment.

2. Negligence— contributory—affirmative defense—doctrine of avoidable consequences

The trial court did not err by granting plaintiffs' motion for summary judgment as to defendants' affirmative defense of contributory negligence allegedly based on plaintiff teacher's failure to file the petition for judicial review that defendants, a law firm hired by plaintiff in connection with any dismissal proceedings that might arise, prepared and sent to him after defendants missed the deadline to request that a Professional Review Committee review a superintendent's decision to recommend plaintiff's dismissal, because: (1) plaintiff's original injury was caused by defendants' failure to mail the letter requesting review of the superintendent's recommendation that he be dismissed; and (2) defendants' argument that he should have petitioned for judicial review thereafter would only have been relevant as to whether he failed to mitigate his damages or avoid the consequences of defendants' negligence.

3. Negligence— insulating—affirmative defense

The trial court did not err by granting plaintiffs' motion for summary judgment as to defendants' affirmative defenses of insulating negligence, contribution, and indemnification allegedly based on third-party defendants' intentional or negligent failure to petition for judicial review after defendants, a law firm hired by plaintiff teacher in connection with any dismissal proceedings that might arise, missed the deadline to request that a Professional Review Committee review a superintendent's decision to recommend plaintiff's dismissal, because plaintiffs hired third-party defendant attorney to handle plaintiffs' claims against defendants instead of to obtain judicial review of plaintiff teacher's dismissal.

HUMMER v. PULLEY, WATSON, KING & LISCHER, P.A.

[140 N.C. App. 270 (2000)]

**4. Pleadings— Rule 11 sanctions—failure to file pleading well-grounded in fact**

The trial court did not err by imposing N.C.G.S. § 1A-1, Rule 11 sanctions against defendants and their counsel based on a failure to file a pleading that is well-grounded in fact, because: (1) the third-party complaint and affirmative defenses are based upon defendants' contention that plaintiffs or third-party defendants, acting on plaintiffs' behalf, should have sought judicial review of a board of education's decision to terminate plaintiff teacher; (2) the specific prohibition set out in N.C.G.S. § 115-325(n) against judicial review for a career employee public school teacher terminated under circumstances such as those in the case at bar overrides any general allowance of judicial review of an agency decision permitted by N.C.G.S. §§ 150B-43 to 150B-52; and (3) neither plaintiffs nor third-party defendants could have been negligent as a result of any action they took or failed to take after the time elapsed to request a review of the superintendent's decision by a Professional Review Committee.

**5. Pleadings— Rule 11 sanctions—failure to form a reasonable belief pleadings warranted by existing law**

The trial court did not err by imposing N.C.G.S. § 1A-1, Rule 11 sanctions against defendants and their counsel based on a failure to form a reasonable belief that the pleadings were warranted by existing law, because: (1) as to the affirmative defense of contributory negligence, although the Board attorney's letter suggested that defendants file a petition for judicial review, defendants instead waited until they terminated their relationship with plaintiff teacher and then proposed that plaintiff file the petition; and (2) as to the affirmative defense of insulating negligence by third-party defendants and for filing the third-party complaint, defendants knew or should have known that third-party defendants were in no position to file a petition for judicial review.

**6. Pleadings— Rule 11 sanctions—professional liability insurance—abuse of discretion**

The trial court abused its discretion by ordering defendants and their counsel to pay third-party defendant attorney $2,500 representing the difference between the $5,000 professional liability insurance deductible that is currently available to third-party defendant, and the $2,500 deductible that would have been

available to third-party defendant if the third-party complaint had not been filed, because: (1) the order imposing sanctions contains no finding that third-party defendant actually purchased professional liability insurance; and (2) the amended record on appeal contains a letter from the president of third-party defendant's insurance company explaining that his policy contained a $5,000 deductible since he had a gap of over two years in his professional liability insurance coverage, rather than as the result of any pending suit against him.

**7. Appeal and Error— preservation of issues—failure to cite authority**

Although defendants challenge the trial court's supplemental order authorizing entry of judgment, defendants failed to preserve this issue under N.C. R. App. P. 28(b)(5) since they did not cite any authority to support this assignment of error.

Judge LEWIS dissenting in part.

Appeal by defendants and third-party plaintiffs from order entered 29 January 1999 by Judge Abraham Penn Jones in Durham County Superior Court. Heard in the Court of Appeals 19 May 2000.

*Law Offices of Willie D. Gilbert, II, P.A., by Willie D. Gilbert, II, for plaintiff-appellees, and Law Offices of James E. Hairston, Jr., by James E. Hairston, Jr., for third-party defendant-appellees.*

*Bryant Patterson Covington & Idol, P.A., by Lee A. Patterson, II, for defendant-and third-party plaintiff-appellants.*

EDMUNDS, Judge.

Defendants and third-party plaintiffs appeal the trial court's grant of summary judgment to plaintiffs and third-party defendants and imposition of Rule 11 sanctions. We affirm in part and reverse in part.

Plaintiff David Hummer (Hummer) was a "career status teacher" in the Durham Public School system. On 12 June 1997, during a teacher workday at Northern Durham High School, Hummer was approached by the principal, Isaac Thomas (Thomas). A heated exchange ensued, and Hummer told Thomas that if Thomas wished to take another teacher's side in a personal conflict with Hummer,

Thomas should "let me know, and I can add you to the list and kick your tail too." As a result, Thomas instructed Hummer to leave the premises and informed Hummer that he would have him fired.

On 8 July 1997, Hummer met with attorney Tracy Lischer, a member of the law firm Pulley, Watson, King & Lischer, P.A. (The firm is a defendant/third-party plaintiff, as is Ms. Lischer individually. For clarity, we will refer to the firm as Pulley, Watson, to Ms. Lischer as Lischer, and to these parties collectively as defendants.) Lischer agreed to represent Hummer in connection with any dismissal proceedings that might arise. On 4 August 1997, the superintendent of Durham Public Schools notified Hummer by certified mail that she was suspending him without pay and announced her intention to recommend his dismissal on the grounds of insubordination, neglect of duty, failure to fulfill the duties and responsibilities imposed upon teachers by the general statutes of North Carolina, and failure to comply with the reasonable requirements of the Board of Education (the Board). In accordance with N.C. Gen. Stat. § 115C-325(h)(2), (3) (1994), the superintendent also informed Hummer that unless he challenged her dismissal recommendation by making a written request within fifteen (15) days of receipt of her notice letter for either (a) a review of the superintendent's proposed recommendation for dismissal by members of a Professional Review Committee or (b) a hearing before the Board, her recommendation would be submitted directly to the Board for action.

Hummer provided defendants a copy of this letter. Although Lischer drafted a letter requesting that a Professional Review Committee review the superintendent's decision to recommend Hummer's dismissal, the letter was never mailed due to a mistake made in defendants' office. On 9 September 1997, the Board voted to dismiss Hummer from his job. On 18 September 1997, Lischer wrote the Board, asking that it reconsider its decision, and in a letter to Hummer written on Pulley, Watson stationery dated 22 September 1997, Lischer took full responsibility for failing to mail the request for a hearing. She informed Hummer that because Pulley, Watson's malpractice carrier had instructed that Lischer could continue to "try to undo the damage," she had written the Board asking the Board to rescind its action or grant Hummer a hearing. Lischer then invited Hummer to consult another attorney about his potential malpractice claim.

On 7 October 1997, Lischer again wrote Hummer stating that she was waiting for the Board to respond to her last request for an exten-

**HUMMER v. PULLEY, WATSON, KING & LISCHER, P.A.**

[140 N.C. App. 270 (2000)]

sion of time to request review of the superintendent's recommendation. However, by a letter also dated 7 October 1997, the Board through its attorney informed defendants it would not reconsider its decision to uphold the superintendent's recommendation that Hummer be dismissed. The letter also suggested that defendants consider filing a petition for review pursuant to N.C. Gen. Stat. § 115C-325(n). That statute, however, states judicial review is not available to a career employee (such as Hummer) who is dismissed and does not request a hearing before a board of education. *See id.*

On 20 October 1997, Lischer advised Hummer by letter that because of the increasing adversarial nature of their relationship, she could no longer represent him. She enclosed a petition requesting judicial review of the Board's decision and suggested Hummer file it *pro se* or have another attorney file it. Lischer's letter included information about where and when to file the petition. On 28 October 1997, defendants mailed Hummer a letter stating that defendants' malpractice carrier, Lawyers Mutual, "expect[ed] Mr. Hummer to follow through on the petition for judicial review" and reminding him to file it by 5 November 1997. Hummer never filed such a petition.

On 31 October 1997, third-party defendant Willie D. Gilbert, II (Gilbert), an attorney with third-party defendant law firm Willie D. Gilbert, II, P.A., wrote Lischer advising that he had been retained by Hummer in connection with a potential lawsuit against Pulley, Watson and requesting that any further contact with Hummer be through Gilbert. On 13 February 1998, Gilbert filed suit against defendants on behalf of Hummer and his wife (collectively, plaintiffs), seeking recovery for breach of contract, legal malpractice, negligent infliction of emotional distress, and negligent misrepresentation. Defendants answered through their counsel, Bryant, Patterson, Covington & Idol, P.A., denying the material allegations of the complaint and asserting affirmative defenses of contributory negligence (alleging Hummer's failure to petition for judicial review) and insulating negligence (alleging Gilbert's failure to petition for judicial review on Hummer's behalf). Defendants also filed a third-party complaint against Gilbert individually and as a professional corporation, seeking contribution or indemnity under the theory that he negligently or intentionally caused or contributed to plaintiffs' harm.

At the close of the pleadings, plaintiffs moved for partial summary judgment as to defendants' affirmative defenses of contributory

and insulating negligence. Gilbert filed a motion for summary judgment as to all claims for contribution and indemnity. Both plaintiffs and Gilbert sought Rule 11 sanctions against defendants and defendants' counsel, asserting that the affirmative defenses in defendants' answer and the grounds for relief in the third-party complaint were neither well-grounded in fact nor warranted by existing law. *See* N.C. Gen. Stat. § 1A-1, Rule 11 (1999).

Following a 28 October 1998 evidentiary hearing, the trial court entered two orders on 29 January 1999. The first order granted plaintiffs' and Gilbert's motions for summary judgment, while the second order granted plaintiffs' and Gilbert's motions for Rule 11 sanctions. The order of sanctions decreed that plaintiffs recover $3,562.50 in attorney fees from defendants and their counsel, that Gilbert recover $1,917.50 in attorney fees from defendants and their counsel, and that defendants and their counsel pay to Gilbert an additional $2,500.00, representing the difference "between the $5,000.00 professional liability insurance deductible that is currently available to the Third-Party Defendants, and the $2,500.00 deductible that would have been available to the Third-Party Defendants had the [defendants] complied with their obligations under Rule 11." The order stated that defendants and their counsel were jointly and severally liable for these amounts.

Defendants appealed from the order allowing summary judgment and from the order granting sanctions. Twelve days later, defendants filed a Rule 60(b) motion for relief from the order imposing the $2,500.00 sanction. N.C. Gen. Stat. § 1A-1, Rule 60(b) (1999). The trial court declined to include their motion in the record on appeal. Although this Court denied defendants' petition for writ of certiorari to include this motion in the record on appeal, we allowed defendants to amend the record on appeal to include the motion.

## I.

[1] We first address the issue of whether this appeal is interlocutory. Although plaintiffs and Gilbert contend in their joint appellate brief that the appeal is interlocutory, all parties expressed a willingness to proceed at oral argument. This agreement is not binding because the prohibition against interlocutory appeals is statutory. *See* N.C. Gen. Stat. § 1A-1, Rule 54 (1999); N.C. Gen. Stat. § 1-277 (1999). "The parties cannot by stipulation modify the extent of appellate review prescribed in the statute." *Fisher v. E.I. Du Pont De Nemours*, 54 N.C. App. 176, 177-78, 282 S.E.2d 543, 544 (1981).

However, this Court previously has held that " 'an order imposing sanctions on counsel, or any other non-party to the underlying action, may immediately be appealed as a final order.' " *Mack v. Moore*, 107 N.C. App. 87, 90, 418 S.E.2d 685, 687 (1992) (citation omitted). Defendants and their counsel were held to be jointly and severally liable for various monetary penalties. We therefore consider whether defendants' counsel appealed.

Defendants' counsel did not include the firm name on the notice of appeal from the sanction order. Although entry of notice of appeal is jurisdictional, *see Abels v. Renfro Corp.*, 126 N.C. App. 800, 486 S.E.2d 735 (1997), this Court has stated that if a party technically fails to comply with a procedural requirement in filing papers with the Court, the Court may nevertheless find compliance if the party achieved the functional equivalent of the requirement, *see State ex rel. Utilities Comm'n v. MCI*, 132 N.C. App. 625, 514 S.E.2d 276 (1999); *Von Ramm v. Von Ramm*, 99 N.C. App. 153, 392 S.E.2d 422 (1990). Here, defendants' counsel are not parties to the case. The sanctions order did not name defendants' attorneys in the caption, nor was there any finding of fact in the body of the order that defendants' attorneys had been derelict. Instead, the order made numerous and extensive findings of fact about defendants, but only recited in its conclusions of law that defendants' counsel were jointly and severally liable with defendants. Defendants' counsel's signature on the notice of appeal from the sanctions order indicated participation in the appeal. In light of these factors, we hold that defendants' counsel's failure to name themselves in the body of the notice of appeal is a procedural rather than a jurisdictional error, and defendants' counsel achieved the functional equivalent of naming themselves as appellants in the notice of appeal.

Because we may hear the appeal of the sanctions imposed upon defendants' counsel, and because precisely the same facts are involved in defendants' appeal of sanctions imposed upon them, we elect to hear that aspect of this appeal as well. Further, because the determination of the propriety of sanctions cannot be separated from the trial court's grant of summary judgment, in the interest of judicial economy, we will review the order granting summary judgment to plaintiffs and third-party defendants on defendants' affirmative defenses and third-party claims. *See* N.C. R. App. P. 2.

## II.

Defendants contend the trial court erred in granting plaintiffs' motion for summary judgment as to defendants' affirmative defenses of contributory and insulating negligence. Summary judgment is appropriate where there is no genuine issue of material fact and where the movant is entitled to judgment as a matter of law. *See Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E.2d 823 (1971). We review the record in the light most favorable to the nonmovant. *See Caldwell v. Deese*, 288 N.C. 375, 218 S.E.2d 379 (1975). Although the trial court's order contained findings of facts and conclusions of law, we have held:

> A trial judge is not required to make finding[s] of fact and con-
> clusions of law in determining a motion for summary judgment,
> and if he does make some, they are disregarded on appeal. Rule
> 52(a)(2) does not apply to the decision on a summary judgment
> motion because, if findings of fact are necessary to resolve an
> issue, summary judgment is improper. However, such findings
> and conclusions do not render a summary judgment void or
> voidable and may be helpful, if the facts are not at issue and sup-
> port the judgment.

*Mosley v. Finance Co.*, 36 N.C. App. 109, 111, 243 S.E.2d 145, 147 (1978) (internal citations omitted). We address defendants' issues *seriatim*.

### A. Contributory Negligence

[2] Defendants contend that Hummer was contributorily negligent in not filing the petition for judicial review that defendants prepared and sent to him. This issue is controlled by our holding in *Watson v. Storie*, 60 N.C. App. 736, 300 S.E.2d 55 (1983), where the decedent's wife brought suit against the defendant after her husband died from injuries sustained while riding as a passenger in the defendant's vehicle. The defendant, the defendant's brother, and the decedent's wife urged the decedent to seek medical treatment after the accident, but the decedent refused for two days. The decedent finally gave in to the importuning but died while preparing to see a doctor. Although the jury found that the decedent had been contributorily negligent, we held on appeal that an instruction on contributory negligence was not supported by the evidence.

> [C]ontributory negligence "is negligence on the part of the plain-
> tiff which joins, simultaneously or successively, with the negli-

gence of the defendant alleged in the complaint to produce the injury of which the plaintiff complains." It is "a plaintiff's negligence which concurs with that of the defendant in producing the occurrence which caused the original injury . . . ."

*Id.* at 738, 300 S.E.2d at 57 (internal citations omitted).

In the case at bar, Hummer's original injury was caused by defendants' failure to mail the letter requesting review of the superintendent's recommendation that he be dismissed. Therefore, defendants' argument that Hummer should have petitioned for judicial review thereafter would only have been relevant as to whether he failed to mitigate his damages or avoid the consequences of defendants' negligence.

> "The doctrine of avoidable consequences is to be distinguished from the doctrine of contributory negligence. Generally, they occur—if at all—at different times. Contributory negligence occurs either before or at the time of the wrongful act or omission of the defendant. On the other hand, the avoidable consequences generally arise after the wrongful act of the defendant. That is, damages may flow from the wrongful act or omission of the defendant, and if some of these damages could reasonably have been avoided by the plaintiff, then the doctrine of avoidable consequences prevents the avoidable damages from being added to the amount of damages recoverable."

*Miller v. Miller*, 273 N.C. 228, 239, 160 S.E.2d 65, 74 (1968) (citation omitted). Accordingly, we affirm the trial court's grant of summary judgment as to defendants' affirmative defense of contributory negligence.

B. Insulating Negligence, Contribution, and Indemnification

[3] Defendants also pled insulating negligence, arguing that Gilbert's intentional or negligent failure to petition for judicial review proximately caused Hummer's injuries and barred recovery from defendants. However, defendants' claims fail if there is no evidence that Gilbert was negligent.

Based on our review of the record, we conclude that, even assuming judicial review was available to plaintiffs, Gilbert's conduct could not support a claim of insulating negligence, contribution, or indemnification. The record demonstrates that plaintiffs did not engage Gilbert to seek judicial review of Hummer's dismissal. The engage-

ment letter signed by Gilbert and plaintiffs, and a later letter from Gilbert to defendants, indicate that Gilbert's representation was limited to handling plaintiffs' claims against defendants. "A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d), and (e), and shall consult with the client as to the means by which they are to be pursued." Rev. R. Prof. Conduct N.C. St. B. 1.2, 2000 Ann. N.C. 531. Because plaintiffs did not hire Gilbert to obtain judicial review of Hummer's dismissal, defendants' theories of insulating negligence, contribution, and indemnification are inapplicable. These assignments of error are overruled, and the trial court properly granted summary judgment as to these issues.

## III.

[4] Defendants next contend the trial court erred in imposing Rule 11 sanctions against defendants and defendants' counsel. N.C. Gen. Stat. § 1A-1, Rule 11. A party or his attorney may not file a pleading that is (1) not well grounded in fact, (2) not "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law," or (3) filed for an improper purpose. *Id.* A violation of any one of these requirements may support sanctions under Rule 11. *See Williams v. Hinton,* 127 N.C. App. 421, 423, 490 S.E.2d 239, 241 (1997).

We review the imposition of sanctions *de novo. See id.* at 423, 490 S.E.2d at 240.

> *De novo* review by an appellate court involves a determination of: (1) whether the trial court's conclusions of law support its judgment or determination, (2) whether the trial court's conclusions of law are supported by its findings of fact, and (3) whether the findings of fact are supported by a sufficiency of the evidence.

*Id.* at 423, 490 S.E.2d at 240-41 (citation omitted).

We consider the legal sufficiency of the sanctions in accordance with the following analysis:

> "[T]he court must first determine the facial plausibility of the paper. If the paper is facially plausible, then the inquiry is complete, and sanctions are not proper. If the paper is not facially plausible, then the second issue is (1) whether the alleged offender undertook a reasonable inquiry into the law, and (2) whether, based upon the results of the inquiry, formed a reason-

**HUMMER v. PULLEY, WATSON, KING & LISCHER, P.A.**

[140 N.C. App. 270 (2000)]

able belief that the paper was warranted by existing law, judged as of the time the paper was signed. If the court answers either prong of this second issue negatively, then Rule 11 sanctions are appropriate."

*McClerin v. R-M Industries, Inc.*, 118 N.C. App. 640, 643-44, 456 S.E.2d 352, 355 (1995) (alteration in original) (citations omitted). The trial court made the following finding of fact as to defendants' claim of insulating negligence by Gilbert and defendants' third-party complaint against Gilbert:

> Not only have the Defendants/Third-Party Plaintiffs failed to demonstrate that they undertook a reasonable inquiry into the law and the facts underlying their claims of alleged negligence on the part of the Third-Party Defendants, but they have also failed to demonstrate that, based upon the results of such an inquiry, they reasonably believed that their claims of negligence on the part of the Third-Party Defendants were well-grounded in fact and in law.

Based on this and other findings of fact, the court concluded as a matter of law:

> By signing the verified Answer and the verified Third-Party Complaint in this action, the [defendants] have violated Rule 11. This is true because although the Court concludes that at the time the [defendants] signed their verified Answer and Third-Party Complaint the [defendants] had failed to conduct a reasonable inquiry into the law and the facts underlying their claims of alleged negligence on the part of the Third-Party Defendants, even if the Court were to assume such a reasonable inquiry, the Court nevertheless concludes that no reasonable person in [defendants'] position, after having read, studied and considered the applicable law and facts of this case, could have concluded that the claims of negligence on the part of the Third-Party Defendants are well-grounded in fact and in law. Nor could such a reasonable person have concluded that the claims of negligence on the part of the Third-Party Defendants are warranted by a good faith argument for the extension, modification, or reversal of existing law.

The trial court did not make similar findings of fact or conclusions of law with regard to defendants' affirmative defense of contributory negligence by plaintiffs.

We first determine whether defendants' third-party complaint and affirmative defenses are facially plausible. Although we held in Part II, above, that summary judgment was appropriate as to the third-party complaint and the affirmative defenses, we will analyze the argument advanced by defendants. The third-party complaint and the affirmative defenses are based upon defendants' contention that plaintiffs, or Gilbert acting on plaintiffs' behalf, should have sought judicial review of the Board's decision to terminate Hummer. The record reveals that Hummer was notified by the superintendent in accordance with N.C. Gen. Stat. § 115C-325(h)(2), (3) that unless he challenged the superintendent's recommendation for dismissal by mailing a written request, within fifteen days of receipt of her notice letter, for either (a) a review of the superintendent's proposed recommendation for dismissal by members of a Professional Review Committee, or (b) a hearing before the Durham County Board of Education, her recommendation would be submitted directly to the Board for action. The fifteen-day deadline for challenging a superintendent's recommendation is statutory. *See* N.C. Gen. Stat. § 115C-325(h)(3). The General Assembly has further provided in N.C. Gen. Stat. § 115C-325(n):

> Any teacher who has been dismissed or demoted pursuant to G.S. 115C-325[(h)] . . . shall have the right to appeal from the decision of the board to the superior court . . . . *A teacher who has been demoted or dismissed . . . who has not requested a hearing before the board of education pursuant to this section shall not be entitled to judicial review of the board's action.*

(Emphasis added.) Defendants did not file a timely request for review by the Board pursuant to N.C. Gen. Stat. § 115C-325(h)(3). This failure to file foreclosed any possibility of later judicial review. *See* N.C. Gen. Stat. § 115C-325(n).

Nevertheless, defendants argue that judicial review was available to Hummer. Defendants' theory, set out in their third-party complaint, is that Hummer had until 5 November 1997 to petition for judicial review, based on defendants' contention that the thirty-day period to file an appeal for judicial review started running on 7 October 1997, the day Hummer was notified that the Board would not reconsider its prior decision to accept the superintendent's recommendation that Hummer be dismissed. Consequently, defendants argue, plaintiffs and Gilbert had time to petition for judicial review and were negligent in failing to do so. Defendants' theory raises the question of why defend-

ants did not themselves petition for judicial review on Hummer's behalf between 7 October 1997, when the Board announced its decision not to reconsider, and 20 October 1997, when defendants unilaterally terminated their relationship with Hummer. We will address this question below.

Any contention that Hummer or Gilbert might have filed for judicial review fails in light of the plain language of N.C. Gen. Stat. § 115C-325(n), which states that the time to request judicial review begins running the day notice of the Board's decision is received. Hummer was advised of the Board's decision to terminate him by certified letter dated 15 September 1997, and any right he had to request judicial review began to run at that time. Defendants' contention that the time to request such review began upon the Board's refusal to reconsider its action is incorrect. The time to file a request for judicial review (had review been permitted by statute) elapsed thirty days after Hummer's receipt of the 15 September 1997 letter, at which time defendants were still representing Hummer; they did not unilaterally terminate their representation of Hummer until 20 October 1997. As a consequence, no subsequent attorney could have asked for timely review.

However, even if a request for judicial review had been filed in accordance with defendants' theory, N.C. Gen. Stat. § 115C-325(n) unmistakably states that Hummer was not entitled to such review. Although defendants cite *Sherrod v. N.C. Dept. of Human Resources*, 105 N.C. App. 526, 414 S.E.2d 50 (1992) and *Lewis v. N.C. Dept. of Human Resources*, 92 N.C. App. 737, 375 S.E.2d 712 (1989), for the proposition that judicial review was available, neither case involves a teacher. The dismissed employee in both *Sherrod* and *Lewis* was therefore able to seek judicial review apparently pursuant to N.C. Gen. Stat. § 150B-43 (1999). By contrast, plaintiff in the case at bar was a teacher whose employment was covered by N.C. Gen. Stat. § 115C-325. When conflicting statutes are construed, the specific controls over the general if the statutes cannot be reconciled. *See Krauss v. Wayne County DSS*, 347 N.C. 371, 493 S.E.2d 428 (1997). Therefore, the specific prohibition set out in section 115C-325(n) against judicial review for a career employee public school teacher terminated under circumstances such as those in the case at bar overrides any general allowance of judicial review of an agency decision permitted by N.C. Gen. Stat. §§ 150B-43 to -52.

Consequently, neither plaintiffs nor Gilbert could have been negligent as a result of any action they took or failed to take after the

time elapsed to request a review of the superintendent's decision by a Professional Review Committee. Defendants' affirmative defenses and third-party complaint therefore were not well-grounded in fact and were facially implausible.

**[5]** We next determine whether defendants undertook a reasonable inquiry into the law and, if so, whether defendants formed a reasonable belief that the pleadings were warranted by existing law. As to the affirmative defense of contributory negligence, it does not appear from our research that the issue raised by defendants, whether judicial review was available where the procedures for administrative review had not been exhausted, had been litigated previously. Therefore, defendants had little guidance as to this issue. In addition, in his letter of 7 October 1997, the Board's attorney suggested that defendants petition for judicial review. Accordingly, we will assume that defendants made a reasonable inquiry into the law. However, we are unable to find that defendants formed a reasonable belief that the pleading was warranted by existing law. As noted above, defendants were advised by letter dated 7 October 1997 that the Board had declined to reconsider its decision to terminate Hummer. That same letter, written to Lischer, contained the suggestion: "*You* have indicated that your next step would be a writ of mandamus. *You* may wish to consider filing a petition for review pursuant to G.S. § 115C-325(n) instead." (Emphasis added.) Defendants continued to represent Hummer until they terminated their relationship with him on 20 October 1997. Defendants' letter to Hummer ending their relationship stated:

> Your next step, according to the letter we received from Ken Soo on October 8, 1997 is to petition for judicial review. We have that petition drafted. However, if I sign it, I will be attorney of record and may or may not be allowed to withdraw if the attorney-client relationship deteriorates further in the future.

This letter provides no explanation why defendants failed to file a petition for judicial review during the period between 8 October 1997 and 20 October 1997. Although the Board's attorney's letter suggested that defendants file the petition, defendants instead waited until they terminated their relationship with Hummer, then proposed that he file the petition. We conclude from this pattern of behavior that defendants did not have a reasonable belief that the pleading was warranted by existing law.

**HUMMER v. PULLEY, WATSON, KING & LISCHER, P.A.**

[140 N.C. App. 270 (2000)]

We reach a similar conclusion as to the sanctions imposed on defendants for raising the affirmative defense of insulating negligence by Gilbert and for filing the third-party complaint against Gilbert. At the time defendants filed the third-party complaint, they knew or should have known that Gilbert was in no position to file a petition for judicial review. In a letter dated 31 October 1997, long before defendants' 13 March 1998 filing of its answer and third-party complaint, Gilbert wrote Lischer informing her that he had been retained for the purpose of representing plaintiffs in their claims against defendants. In the same letter, Gilbert also stated that it was defendants' responsibility to seek relief from the original mistake of failing to seek judicial review. This letter leaves no doubt that Gilbert's representation of plaintiffs was limited to representation of them in their breach of contract and legal malpractice claims against defendants. Accordingly, sanctions imposed by the trial court based upon defendants' affirmative defense of insulating negligence and defendants' third-party complaint were proper.

[6] Defendants also challenge the trial court's order that they and their counsel pay Gilbert "$2,500.00[] representing the difference between the $5,000.00 professional liability insurance deductible that is currently available to the Third-Party Defendants, and the $2,500.00 deductible that would have been available to the Third-Party Defendants" if the third-party complaint had not been filed. This sanction is reviewable under an abuse of discretion standard, *see Turner v. Duke University*, 325 N.C. 152, 381 S.E.2d 706 (1989), and upon careful review of the record, we hold this sanction was imposed improperly. The order imposing sanctions contains no finding that Gilbert actually purchased professional liability insurance. In addition, the amended record on appeal contains a letter from the president of Gilbert's insurance company explaining that his policy contained a $5,000.00 deductible because Gilbert had a gap of over two years in his professional liability insurance coverage, rather than as the result of any pending suit against him. The sanctions order in this regard is reversed.

IV.

[7] Finally, defendants challenge the trial court's 3 May 1999 "Supplemental Order Authorizing The Entry Of Judgment." Although defendants contend this order was entered improperly, they have cited no authority to support this assignment of error. *See* N.C. R. App. P. 28(b)(5). Accordingly, this assignment of error is overruled.

**HUMMER v. PULLEY, WATSON, KING & LISCHER, P.A.**

[140 N.C. App. 270 (2000)]

To conclude, we affirm the trial court's grant of summary judgment to plaintiffs on defendants' affirmative defenses. We also affirm the trial court's grant of summary judgment to third-party defendants on defendants' third-party claims. We further affirm the imposition of sanctions based upon defendants' alleging the affirmative defenses of insulating negligence and contributory negligence and defendants' filing of the third-party complaint. We reverse the imposition of sanctions in the amount of $2,500.00 pertaining to liability insurance. We remand this matter to the trial court for reentry of an order of sanctions in accordance with this opinion.

Affirmed in part, reversed in part.

Chief Judge EAGLES concurs.

Judge LEWIS dissents in part.

Judge LEWIS dissenting in part.

I respectfully dissent from that portion of the majority's opinion upholding the imposition of sanctions upon defendants and their counsel for asserting the defense of contributory negligence in their answer. As the majority articulates, review of sanctions first requires us to determine the facial plausibility of defendants' assertion of contributory negligence. *Mack v. Moore*, 107 N.C. App. 87, 91, 418 S.E.2d 685, 688 (1992). If their defense was not facially plausible, we then consider whether defendants (1) undertook a reasonable inquiry into the law and (2) based upon this inquiry, formed an objectively reasonable belief that the contributory negligence defense was warranted by existing law or an extension thereof. *Id.* I believe assertion of contributory negligence was facially plausible. The relevant statute does state, "A career employee who has been demoted or dismissed . . . who has not requested a hearing before the board of education pursuant to this section shall not be entitled to judicial review of the board's action." N.C. Gen. Stat. § 115C-325(n) (1999). At the time defendants asserted their defense, however, our courts had developed no case law construing or applying this provision. Defendants argued there should be *judicially*-created exceptions to this provision based upon "manifest unfairness," such as when a client intended to request a hearing but his lawyer inadvertently failed to do so. Defendants also claimed that their belated petition for hearing preserved the right to judicial review and·the statute thereby

entitled them to a thirty-day period during which to exercise that right. Although these arguments ultimately proved unpersuasive, I cannot say that they were so facially implausible as to warrant the imposition of sanctions.

Furthermore, even if the defense was not facially plausible, I believe defendants undertook a reasonably sufficient inquiry and, based upon that inquiry, formed an objectively reasonable belief that the defense was warranted by existing law or an extension thereof. The trial court found that defendants did neither. However, there is no evidence in the record to support this finding. *See Turner v. Duke University*, 325 N.C. 152, 165, 381 S.E.2d 706, 714 (1989) (stating that de novo review of sanctions requires determining, among other things, whether the findings of fact are supported by sufficient evidence). This is a statute that had never been construed before. Accordingly, a reasonable inquiry could not have involved extensive research. Furthermore, at the time defendants asserted contributory negligence, the Board's own attorney had instructed them via letter that they should try to petition for judicial review via section 115C-325(n), even though that statute states they were not entitled to judicial review at all because they failed to seek a hearing within fourteen days of receipt of the superintendent's intended recommendation. N.C. Gen. Stat. § 115c-325(h)(2)-(3), (n) (1999). This lends objective credence to defendants' beliefs and illustrates their beliefs were not so unreasonable as to warrant the imposition of sanctions for asserting contributory negligence as a defense.

However, I do concur in the majority's conclusion that imposition of sanctions for filing the third-party complaint was appropriate. I agree with the majority's reasoning that third-party defendants' letter clearly notified defendants they were involved in this matter solely for the purpose of plaintiffs' breach of contract and legal malpractice claims—not for further legal assistance in restoring plaintiff's job. I also concur with the majority's opinion that the $2500 sanction based on insurance fees cannot stand.