IN THE MATTER OF: E.T.T., D.S.J., D.D.D.J., D.H.T., D.S.T., Minor Children.
No. COA09-1520.
Court of Appeals of North Carolina.
Filed April 20, 2010.
Staff Attorney Jayne B. Norwood for the Nash County Department of Social Services.
Parker Poe Adams & Bernstein LLP, by Adam C. Shearer, for guardian ad litem.
Rebekah W. Davis for respondent-appellant mother.

UNPUBLISHED OPINION
STEPHENS, Judge.
Respondent-mother appeals from the trial court's 1 September 2009 order terminating her parental rights to E.T.T., D.S.J., D.D.D.J., D.H.T., and D.S.T. (collectively, "the juveniles").[1] Respondent-mother contends that several of the trial court's findings of fact are not supported by the evidence, and that the trial court's conclusion that the juveniles are neglected juveniles within the meaning of N.C. Gen. Stat. § 7B-101(15) is not supported by the findings of fact. We do not agree, and thus, affirm the order of the trial court.

I. Procedural History and Factual Background
The Nash County Department of Social Services ("DSS") first became involved with this family in 2001, based on reports that the juveniles were not properly supervised. Respondent-mother is the mother of all five juveniles. J.T. is the father of E.T.T., D.H.T., and D.S.T., and A.J. is the father of D.S.J. and D.D.D.J. DSS discovered incidents of domestic violence between respondent-mother and both of the fathers, and also found that respondent-mother left the juveniles in J.T.'s care at times when he was under the influence of alcohol.
On 2 May 2007, DSS received another protective services referral alleging a lack of supervision. According to the referral, the juveniles, who ranged from nine months to ten years old at the time, were permitted to play unsupervised near a ditch filled with water near respondent-mother's home, and at a school playground. On one occasion, an adult had to pull one of the juveniles from waist-high water in the ditch. When a social worker arrived at the home to investigate, she observed two of the juveniles playing unsupervised near the ditch. On a subsequent visit, the social worker again saw the juveniles playing near the ditch without supervision. When the social worker spoke with respondent-mother, she denied that the juveniles were unsupervised, but made kinship placement arrangements with the juveniles' maternal grandmother. After that placement ended, the juveniles returned home, but respondent-mother was subsequently evicted. As a result, the juveniles were separated and placed with other relatives.
On 12 September 2007, DSS filed petitions alleging that the juveniles were neglected, based on a lack of proper supervision dating back to 2001, as well as domestic violence and alcohol and drug abuse. At an adjudication hearing held on 14 February 2008, respondent-mother stipulated that the juveniles were neglected. At disposition, the court ordered that legal custody remain with respondent-mother and physical custody remain with the current relative placements. The court also ordered respondent-mother to comply with random drug screens, maintain stable housing and utilities, demonstrate appropriate parenting skills learned in parenting classes, participate in Women's Alternative to Violent Expression ("WAVE") and Single Women in Mission ("SWIM") sessions until released in writing by her therapist, and work toward reunification with the juveniles.
When respondent-mother made some progress toward her goals, the juveniles were returned to her home in March 2008. Respondent-mother, however, tested positive for cocaine and marijuana on 1 April 2008. Confronted with the test results, respondent-mother admitted to having used cocaine. Respondent-mother's case plan was modified to require her to meet with a qualified substance abuse professional, and to submit to drug screens every four days.
Respondent-mother refused to take drug tests on 9 and 10 June 2008, and on 11 June 2008, she tested positive for cocaine and marijuana. On 23 June 2008, respondent-mother tested positive for pain medication and marijuana. On 7 July 2008, respondent-mother tested positive for marijuana and opiates. Respondent-mother was surprised by the positive test results, but admitted to smoking a "blunt" and using prescription pain relievers. At a review hearing held on 17 July 2008, the court placed the juveniles in DSS custody.
At a review hearing on 23 October 2008, the court found that respondent-mother had submitted to only four drug screens in August and September 2008, and failed to attend the WAVE program. Respondent-mother continued to resist drug testing in the fall of 2008, and a 4 December 2008 screen was positive for marijuana. Respondent-mother also continued to not comply with her family services case plan or work toward reunification. In an order filed on 2 February 2009, the court ordered DSS to cease reasonable efforts toward reunification. At the subsequent permanency planning hearing, the court ordered DSS to implement a dual permanent plan of reunification and adoption.
On 13 April 2009, DSS filed motions to terminate respondent-mother's parental rights to all juveniles. As grounds for termination of respondent-mother's parental rights, DSS alleged that respondent-mother had neglected the juveniles pursuant to N.C. Gen. Stat. § 7B-1111(a)(1). DSS specifically alleged that respondent-mother continued to have problems with substance abuse and domestic violence, and failed to provide proper care or supervision for the juveniles.
The case came on for a termination of parental rights hearing on 4 June, 29 June, and 20 July 2009. Liquita Pearce ("Ms. Pearce"), a substance abuse professional, testified that respondent-mother tested positive for drugs on 1 April, 8 May, 22 May, 11 June, 23 June, 7 July, 8 December, 22 December 2008, and 24 March 2009. In addition, other drug screens were flagged as diluted on 24 November and 5 December 2008, and 26 January and 20 February 2009. Ms. Pearce also testified that respondent-mother frequently avoided drug screens throughout late 2008, and continued to fail to submit to drug screens every four days in 2009. Respondent-mother also failed to attend group therapy at all until 22 October 2008, and never regularly attended therapy. Although respondent-mother was assessed for the WAVE program in August of 2008, she did not begin attending meetings until 20 April 2009, a week after DSS filed the motions to terminate her parental rights. The relatives who had custody of the juveniles testified that they had made progress in school work and discipline since the placement, and that they wished to adopt the juveniles, in order to provide them with a permanent home.
Respondent-mother testified on her own behalf at the hearing, and claimed that she did not attend the WAVE program because she did not believe that she had been ordered by the court to do so and because she did not believe that domestic violence was an issue in her home. Respondent-mother also acknowledged that she allowed the juveniles to play unsupervised at the school and by the water-filled ditch. Respondent-mother denied that she had a substance abuse problem or that she used marijuana or cocaine. Respondent-mother explained her positive drug tests as "being in the wrong car with the wrong person. Basically, that's the only explanation I have."
The trial court concluded that grounds existed to terminate respondent-mother's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), because the juveniles were neglected juveniles within the meaning of N.C. Gen. Stat. § 7B-101(15), and because it was highly likely that the neglect would continue in respondent-mother's custody. The trial court also concluded that it was in the juveniles' best interests to terminate respondent-mother's parental rights. Respondent-mother appeals.

II. Discussion

A. Respondent-Mother's Petition for Writ of Certiorari
We first address respondent-mother's petition for writ of certiorari, requesting that this Court grant certiorari and hear respondent-mother's appeal if the notice of appeal is deemed to be untimely filed. North Carolina Rule of Appellate Procedure 3.1 provides:
Any party entitled by law to appeal from a trial court judgment or order rendered in a case involving termination of parental rights and issues of juvenile dependency or juvenile abuse and/or neglect, appealable pursuant to N.C.G.S. § 7B-1001, may take appeal by filing notice of appeal with the clerk of superior court and serving copies thereof upon all other parties in the time and manner set out in Chapter 7B of the General Statutes of North Carolina. Trial counsel or an appellant not represented by counsel shall be responsible for filing and serving the notice of appeal in the time and manner required. If the appellant is represented by counsel, both the trial counsel and appellant must sign the notice of appeal, and the appellant shall cooperate with counsel throughout the appeal. All such appeals shall comply with the provisions set out in subsection (b) of this rule and, except as hereinafter provided by this rule, all other existing Rules of Appellate Procedure shall remain applicable.
N.C. R. App. P. 3.1(a). "The signature requirement of Rule [3.1] provides record evidence that the appellant desired to pursue the appeal, understood the nature of the appeal, and cooperated with counsel in filing the notice of appeal." In re I.T.P-L., ___ N.C. App. ___, ___, 670 S.E.2d 282, 285 (2008); see Hummer v. Pulley, Watson, King & Lischer, P.A., 140 N.C. App. 270, 277, 536 S.E.2d 349, 353 (2000) (noting that defendants' counsel's signature on a notice of appeal from an order granting sanctions indicated participation in the appeal).
On 11 September 2009, respondent-mother's trial attorney filed and served a notice of appeal without respondent-mother's signature. As proper and timely notice of appeal is jurisdictional, we must dismiss respondent-mother's appeal. In re A.L., 166 N.C. App. 276, 277, 601 S.E.2d 538, 538 (2004). Nevertheless, we exercise our discretion pursuant to N.C. R. App. P. 21(a)(1) and allow respondent-mother's petition for writ of certiorari to permit consideration of her appeal on the merits. See I.T.P-L., ___ N.C. App. at ___, 670 S.E.2d at 285. ("[A]s the timely, albeit incomplete, notices of appeal together with the amended notices of appeal provide record evidence that Respondents desired to pursue the appeal, understood the nature of the appeal, and cooperated with counsel in filing the notice of appeal, we exercise our discretion pursuant to N.C. R. App. P. 21(a)(1) and allow Respondent' petitions for writ of certiorari[.]"). Accordingly, we now turn to the merits of respondent-mother's appeal.

B. Findings and Conclusion that Juveniles Are Neglected Juveniles

We address respondent-mother's two arguments on appeal together because they are closely related. Respondent-mother contends that the evidence does not support several of the trial court's findings of fact or its conclusion that the juveniles are neglected juveniles. We disagree.
"There is a two-step process in a termination of parental rights proceeding." In re Blackburn, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). In the adjudicatory stage, the burden is on the petitioner to prove by clear, cogent, and convincing evidence that at least one ground for termination exists. N.C. Gen. Stat. § 7B-1109(f) (2009); Blackburn, 142 N.C. App. at 610, 543 S.E.2d at 908. Review in the appellate courts is limited to determining whether clear and convincing evidence exists to support the findings of fact, and whether the findings of fact support the conclusions of law. In re Huff, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000), appeal dismissed and disc. review denied, 353 N.C. 374, 547 S.E.2d 9 (2001). "`[F]indings of fact made by the trial court . . . are conclusive on appeal if there is evidence to support them.'" In re H.S.F., 182 N.C. App. 739, 742, 645 S.E.2d 383, 384 (2007) (quoting Hunt v. Hunt, 85 N.C. App. 484, 488, 355 S.E.2d 519, 521 (1987)).
A trial court may terminate parental rights if it concludes "[t]he parent has . . . neglected the juvenile . . . within the meaning of [N.C. Gen. Stat. §] 7B-101." N.C. Gen. Stat. § 7B-1111(a)(1) (2009). A "neglected juvenile" is defined as a "juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker . . . or who lives in an environment injurious to the juvenile's welfare[.]" N.C. Gen. Stat. § 7B-101(15) (2009).
In this case, the trial court's relevant findings of fact are supported by clear, cogent, and convincing evidence, and those findings support the conclusion that the juveniles are neglected juveniles. The trial court found that the juveniles were adjudicated neglected on 14 February 2008, and that respondent-mother was ordered to maintain stable housing, submit to drug screens, and attend the WAVE and SWIM programs. Respondent-mother only attended substance abuse treatment sporadically, and continued to deny that she had a substance abuse problem in spite of her repeated positive drug tests. Respondent-mother also failed to comply with the order that she submit to drug screens every four days, and had numerous positive drug screens, as well as other screens that were flagged as diluted. Respondent-mother denied that she was still in a relationship with J.T., or that the relationship was abusive, while also refusing to attend the court-ordered WAVE sessions. In sum, the trial court found that respondent-mother consistently resisted efforts to address the conditions that led DSS to become involved with her family.
"In cases of this sort, the decision of the trial court must of necessity be predictive in nature, as the trial court must assess whether there is a substantial risk of future abuse or neglect of a child based on the historical facts of the case." In re McLean, 135 N.C. App. 387, 396, 521 S.E.2d 121, 127 (1999). In the case sub judice, the trial court found that respondent-mother has not yet "addressed the substance abuse and domestic violence that led to the children being removed from [her] care." Based on that finding, the trial court concluded that it was highly likely that the neglect would continue if juveniles were returned to respondent-mother's home. In so doing, it is apparent that the trial court carefully considered the evidence of the prior adjudication of neglect, as well as the likelihood of its continuation in the future, before concluding that the juveniles would be at risk if returned to respondent-mother's home. See In re E.N.S., 164 N.C. App. 146, 151, 595 S.E.2d 167, 170, disc. review denied, 359 N.C. 189, 606 S.E.2d 903 (2004) (holding that the trial court's conclusion of neglect was supported by its finding that respondent had not yet addressed persistent substance abuse problems).
Therefore, we hold that the trial court's findings are supported by sufficient evidence in the record, and that the trial court's conclusion that a statutory ground existed to terminate respondent-mother's parental rights is supported by its findings of fact. Accordingly, the trial court's order terminating respondent-mother's parental rights is
AFFIRMED.
Judges BRYANT and CALABRIA concur.
Reported per Rule 30(e).
NOTES
[1] The order also terminated the parental rights of "J.T.," the father of E.T.T., D.H.T., and D.S.T., and the parental rights of "A.J.," the father of D.S.J. and D.D.D.J., but neither father is a party to this appeal. The fathers are herein referred to by their initials when necessary.