An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-797

NORTH CAROLINA COURT OF APPEALS

Filed: 18 March 2014

GERRY THOMAS PEEK
    Plaintiff

    v.                                         Chatham County
                                                No. 11 CVS 482

JAMES MICHAEL WATSON and
KELLY M. WATSON
    Defendants.


Appeal by defendants from judgment entered 26 November 2012 by Judge Elaine M. Bushfan in Chatham County Superior Court. Heard in the Court of Appeals 12 December 2013.


    *Nichols & Satterfield, PLLC, by Daron D. Satterfield, for plaintiff-appellee.*

    *Gunn & Messick, LLP, by Paul S. Messick, Jr., for defendants-appellants.*


    HUNTER, JR., Robert N., Judge.


Defendants James Michael Watson ("James Michael") and his cousin Kelly M. Watson ("Kelly") (collectively "Defendants") appeal from the trial court's decision to deny their motion for directed verdict and their motion for judgment notwithstanding the verdict ("JNOV"). Defendants made these motions on Gerry

Peek's ("Mr. Peek") malicious prosecution claim against Defendants. Based on our review of the evidence, we find no error.

## I. Facts & Procedural History

The evidence presented at trial tended to show the following. Mr. Peek manages a cattle farm off of Bear Creek Church Road in Chatham County on behalf of a trust. The farm borders property previously owned by defendant James Michael's father, James Franklin Watson ("James Franklin"). Mr. Peek enjoyed a longstanding business and personal relationship with James Franklin. As James Franklin's health declined, Mr. Peek and James Franklin's brother Aubrey Clyde Watson ("Clyde") performed the physical labor on both Mr. Peek and James Franklin's farms, while James Franklin managed his own farm's administrative duties. Mr. Peek maintained that the close relationship between Clyde, James Franklin, and himself led to the parties openly sharing farm equipment for as long as five years. After James Franklin's death in November 2007, James Michael administered his father's estate and assumed ownership of the farm.

The trust owned a driveway and Mr. Peek allowed James Franklin, and later James Michael, to use the driveway.

Disputes over the driveway began after James Michael took ownership. Mr. Peek said James Michael invited friends onto his land to shoot firearms and they passed through the shared driveway. Mr. Peek stated James Michael left the driveway gate open, creating a possibility that Mr. Peek's cattle would escape. Mr. Peek denied James Michael access to the driveway, and litigation ensued. Eventually, James Michael purchased land and constructed a separate driveway at his own expense.

After the driveway dispute, Mr. Peek and his home were searched pursuant to a search warrant in May 2008. Chatham County Deputy Sheriff Daniel Tilley ("Dep. Tilley") requested and received authorization for the search warrant, which concerned four pieces of farming equipment. The search warrant application was accompanied by an affidavit from Kelly stating that he helped James Michael inventory farm equipment from James Franklin's estate, that the two developed a list of missing equipment, and that the equipment was last seen on Mr. Peek's property.

Mr. Peek was arrested after Dep. Tilley's search revealed the listed equipment; he was later released on bond. All of the parties stipulated that the criminal case against Mr. Peek was terminated in his favor.

On 25 May 2011 Mr. Peek filed a civil complaint against both Defendants for malicious prosecution resulting from the above criminal action. Defendants moved for summary judgment on 22 February 2012. Superior Court Judge Allen Baddour entered an order on 2 April 2013 denying summary judgment on Mr. Peek's claim for malicious prosecution based on these events. A jury trial resolved factual disputes arising from the complaint on 5 November 2012.

At the jury trial, Mr. Peek testified and identified several photographic exhibits of the farm equipment at issue in his criminal prosecution, which included an auger, a bush hog, a log splitter, and two power generators. These items were purchased by James Franklin, but were shared freely between James Franklin, Clyde, and Mr. Peek to perform their farming tasks. Mr. Peek said he never received a letter or communication from James Michael or Kelly about the equipment, which he had shared with James Franklin over a period of years. Mr. Peek was 52-years-old when arrested. Mr. Peek felt his name was besmirched as a result of being arrested, and that the arrest interfered with his work, caused monetary losses, and caused him to lose sleep.[1]

---

[1] Mr. Peek also called his girlfriend Kimberly Rollick to

On cross-examination of Mr. Peek, Defendants' counsel attempted to introduce Defendant's Exhibit 3 into evidence. The jury left the courtroom and counsel discussed this evidence. Exhibit 3 was a pro se filed "Specific Affidavit of Negative Averment" lawsuit filed against several public officials involved in prosecuting the criminal case. Mr. Peek objected to introduction of Exhibit 3 because it was irrelevant and more prejudicial than probative. The court reviewed the document and denied admission due to the possibility that the evidence would confuse the issues, create unfair prejudice, and that "those risks substantially outweigh the probative value" of the evidence. Defendants' Exhibit 4, which granted the Defendants' Motion to Dismiss Mr. Peek's "Specific Affidavit of Negative Averment" was admitted into evidence, and Mr. Peek was cross-examined about the lawsuit contained in Exhibit 3 by Defendants' counsel.

Dep. Tilley also received multiple communications from James Michael advising him in how to execute the search warrant against Mr. Peek. At trial, Dep. Tilley read aloud an e-mail

---

testify. She averred that the arrest caused Mr. Peek anguish, that Mr. Peek "has eaten, drank, and slept all of this," and that he lost friendships due to the arrest.

from James Michael typical of their correspondence. The e-mail read:

> Also when you are ready to approach Peek with a [arrest warrant] . . . [l]et me know and I can give you a key to the main gate. Like we talked about, you can set up and wait for him to come out. I would suggest waiting him out because my cop sense tells me he has the potential to freak out if a bunch of police approach him at home.
>
> . . . .
>
> I know he has guns because he makes a point of firing them when I come down to the farm. . . . Clyde Watson has a loaded .38 revolver in his glove box.
>
> . . . .
>
> Again, be careful with Peek as well as Mr. Clyde Watson. They may be lambs or lions. They may have already disposed of my property, but the potential for violence really exists with them, especially Peek. Both are anti-government, common law citizens and probably will not recognize your authority.

Defendants told Dep. Tilley that Mr. Peek had fired fully automatic weapons on the property. As a result, Dep. Tilley was concerned for his safety in executing the search warrant and enlisted the assistance of seventeen SWAT team officers to execute the search warrant. Upon executing the warrant, Mr. Peek was not belligerent, and the search uncovered no illegal weapons.

James Michael told Dep. Tilley that Mr. Peek denied having any of James Michael's property. James Michael did not tell Dep. Tilley there was a property sharing relationship and that Mr. Peek possessed the property in question for a number of years. James Michael spoke with Mr. Peek on several occasions about the missing equipment. James Michael said Mr. Peek represented that he did not have any of James Franklin's property and that James Franklin did not owe Mr. Peek any money. Mr. Peek rested his case, and Defendants moved for a directed verdict pursuant to Rule 50. Mr. Peek objected, arguing there was sufficient evidence to be heard by the jury. The trial court denied Defendants' motions.

Defendants called Dolores Watson ("Dolores"), James Michael's wife. Dolores was present during a conversation between James Michael and Mr. Peek where Mr. Peek denied having any of James Franklin's property. Dolores described the visit as cordial. Defendants rested.

Both parties presented closing arguments and the trial court gave jury instructions. Thereafter, the jury found in favor of Mr. Peek and awarded him $20,000 from each defendant. After the jury was excused, Defendants moved for a JNOV, arguing the verdict was contrary to the weight of the evidence, there

was not evidence of actual damages in the case, and the judgment amount was excessive. The trial court denied Defendants' motion. On 26 November 2012 Judge Elaine Bushfan entered a judgment in favor of Mr. Peek. Written notice of appeal was filed by Defendants on 11 December 2012.

## II. Jurisdiction & Standard of Review

The judgment entered upon a jury verdict is a final judgment. Thus, this Court has jurisdiction to review the matter pursuant to N.C. Gen. Stat. § 7A-27(b) (2013).

The first issue is whether the trial court erred in denying Defendants' motion for a directed verdict and Defendants' motion for JNOV. Both the motion for directed verdict and the motion for JNOV on the malicious prosecution claim are reviewed under a sufficiency of the evidence standard: "On appeal our standard of review for a judgment notwithstanding the verdict is the same as that for a directed verdict; that is, whether the evidence was sufficient to go to the jury." *Whitaker v. Akers*, 137 N.C. App. 274, 277, 527 S.E.2d 721, 724 (2000) (citation and quotation marks omitted). This Court must view the evidence in the light most favorable to the non-movant, and the non-movant is entitled to every reasonable inference therefrom. *Papadopoulos v. State Capital Ins. Co.*, 183 N.C. App. 258, 262, 644 S.E.2d 256, 259

(2007). Any conflicts or inconsistencies apparent in the evidence must be construed in favor of the non-movant. *Jernigan v. Herring*, 179 N.C. App. 390, 392, 633 S.E.2d 874, 877 (2006); *Cannon v. Day*, 165 N.C. App. 302, 306, 598 S.E.2d 207, 211 (2004).

The second issue is whether the trial court erred in barring Defendants from introducing Exhibit 3 into evidence. "We review a trial court's decision to exclude evidence under Rule 403 for abuse of discretion." *State v. Whaley*, 362 N.C. 156, 160, 655 S.E.2d 388, 390 (2008). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Trull*, 349 N.C. 428, 445, 509 S.E.2d 178, 190 (1998) (citation and quotation marks omitted).

### III. Analysis

#### A. Motion for Directed Verdict and JNOV

Defendants argue the trial court erred by denying their motion for directed verdict at the close of Mr. Peek's evidence and their motion for JNOV at the close of the trial. We disagree.

"In order to support a malicious prosecution claim, plaintiff must establish the following four elements: '(1)

defendant initiated the earlier proceeding; (2) malice on the part of defendant in doing so; (3) lack of probable cause for the initiation of the earlier proceeding; and (4) termination of the earlier proceeding in favor of the plaintiff.'" *Martin v. Parker*, 150 N.C. App. 179, 182, 563 S.E.2d 216, 218 (2002) (quoting *Best v. Duke Univ.*, 337 N.C. 742, 749, 448 S.E.2d 506, 510 (1994)).

Defendants only argue Mr. Peek failed to establish the first and third elements at trial. [2] Defendants first argue they did not initiate prosecution of Mr. Peek. Defendants argue they simply reported stolen property and assisted law enforcement by confirming its location on Mr. Peek's property. We disagree.

The first element of a malicious prosecution claim, that defendant initiated the prosecution, is not met if the defendant simply "[gave] honest assistance and information to prosecuting authorities." *Williams v. Kuppenheimer Mfg. Co.*, 105 N.C. App.

---

[2] Defendants stipulated to the fourth element and do not argue that Mr. Peek failed to prove malice by Defendants in seeking prosecution. "Malice in a malicious prosecution claim may be shown by offering evidence that defendant was motivated by personal spite and a desire for revenge or that defendant acted with reckless and wanton disregard for plaintiffs' rights." *Becker v. Pierce*, 168 N.C. App. 671, 676, 608 S.E.2d 825, 829 (2005) (citation and quotation marks omitted). As Defendants do not raise this issue, we do not address it further. *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005) ("It is not the role of the appellate courts, however, to create an appeal for an appellant.").

198, 201, 412 S.E.2d. 897, 900 (1992). In *Kuppenheimer*, the defendant provided law enforcement officers with the documentation used to effectuate an arrest, and the trial court ultimately found that were it not for the defendant's efforts, there would not likely have been a prosecution of the plaintiff. *Id.* Thus, the trial court in *Kuppenheimer* found that whether the defendant initiated a prosecution against the defendant was properly a matter for the jury. *Id.*

Here, Mr. Peek presented ample evidence of the first element. Defendants initially provided Dep. Tilley with information that four items of property were missing. Defendants told Dep. Tilley they believed Mr. Peek took the equipment. James Michael stated that Mr. Peek denied having any of James Franklin's property. James Michael instructed Dep. Tilley to "use caution" when interacting with Mr. Peek. James Michael described Mr. Peek and Clyde as dangerous and described the sounds of automatic rifles being fired on Mr. Peek's property. James Michael offered to provide keys to the gate to gain access to Mr. Peek's property. James Michael advised Dep. Tilley to execute the search warrant by waiting for Mr. Peek to come out of his home "[l]ike we talked about," and neglected to tell Dep. Tilley at any point of the investigation that James

Franklin, Clyde, and Mr. Peek often shared farm equipment for long periods of time without incident. The foregoing is sufficient evidence of the first element.

Defendants next argue Mr. Peek did not produce sufficient evidence showing Defendants lacked probable cause to seek prosecution of Mr. Peek. "The test for determining probable cause is whether a man of ordinary prudence and intelligence under the circumstances would have known that the charge had no reasonable foundation." *Strickland v. Hedrick*, 194 N.C. App. 1, 17, 669 S.E.2d 61, 71 (2008) (citations and quotation marks omitted). "Probable cause has been properly defined as the existence of such facts and circumstances, known to the defendant at the time, as would induce a reasonable man to commence a prosecution." *Best*, 337 N.C. at 750, 448 S.E.2d at 510 (citations, alterations, and quotation marks omitted). "The critical time for determining whether or not probable cause existed is when the prosecution begins." *Strickland*, 194 N.C. App. at 17, 669 S.E.2d at 71 (quotation marks and citation omitted). "Moreover, in an action for malicious prosecution, the acquittal of defendant by a court of competent jurisdiction does not make out a *prima facie* case of want of probable cause." *Fowle v. Fowle*, 263 N.C. 724, 729, 140 S.E.2d 398, 402 (1965).

Defendants cite *Best* in support of their assertion. The comparison is inapposite. In *Best*, a detective saw Mr. Best "acting suspiciously" around the Duke University Faculty Club early in the morning. 337 N.C. at 750, 448 S.E.2d. at 510. Mr. Best drove his vehicle off the main road and onto the Duke Faculty Club driveway, turned off the headlights, and moved closer to the hotel. *Id.* When the detective attempted to stop Mr. Best, Mr. Best "sped" away from the detective's vehicle and began a chase on the Duke campus. *Id.* at 750, 448 S.E.2d at 510-11. When Mr. Best stopped his vehicle, wrought-iron furniture was found in his vehicle. *Id.* at 750, 448 S.E.2d at 511. Another officer at the scene checked the Duke Faculty Club that evening and, finding no evidence of furniture missing, released the defendant. *Id.* at 746, 448 S.E.2d at 508.

The next morning, officers learned wrought-iron furniture was indeed stolen from the Duke Faculty Club and initiated a prosecution of Mr. Best. *Id.* The Court found these "uncontroverted facts fully established that a reasonable person would be induced thereby to commence a prosecution against" Mr. Best. *Id.* at 751, 448 S.E.2d at 511. The prosecuting officer in *Best* had *no prior knowledge* concerning Mr. Best or his intentions, nor did his initiation of a prosecution result from

anything other than the observation of an individual located near where property was reported missing holding similar property.

By contrast, here Mr. Peek provided evidence that civilian Defendants initiated the action against Mr. Peek. Mr. Peek presented evidence showing Defendants knew James Franklin and Mr. Peek often shared property. Mr. Peek presented evidence that Mr. Peek and Defendants had few interactions concerning Mr. Peek's possession of James Franklin's property and that Defendants never requested that Mr. Peek return the four items specifically prior to initiating prosecution of Mr. Peek.

After review of the foregoing facts, we hold Mr. Peek introduced sufficient evidence of Defendants' lack of probable cause, satisfying the third element. As sufficient evidence was presented, the trial court not err in denying both the motion for directed verdict and the motion for JNOV.[3]

---

[3] Defendants also argue that "[t]he evidence in this case regarding damages is non-existent." Defendants do not cite any authority for this proposition in their brief. This Court will not "create an appeal for an appellant," *Viar*, 359 N.C. at 402, 610 S.E.2d at 361.

Regardless, Defendants' argument is without merit. *See Raymond U v. Duke Univ.*, 91 N.C. App. 171, 177, 371 S.E.2d 701, 706 (1988) ("To recover for malicious prosecution based on *all types of actions*, the plaintiff must show that the defendant initiated the earlier proceeding, that he did so maliciously and without probable cause, and that the earlier proceeding terminated in

## B. Subsequent Lawsuit Exclusion

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. R. Evid. 403. The "[a]pplication of the Rule 403 balancing test remains entirely within the inherent authority of the trial court." *Warren v. Jackson*, 125 N.C. App. 96, 98, 479 S.E.2d 278, 280, *disc. review denied*, 345 N.C. 760, 485 S.E.2d 310 (1997).[4]

We hold the trial court acted within its discretion in denying admission of Exhibit 3 for "confusion of the issues" and "unfair prejudice." The "specific averment" was filed seven months after the criminal prosecution of Mr. Peek and was not timely. Further, Defendants cross-examined Plaintiff using

---

the plaintiff's favor. Additionally, *in malicious prosecution cases based on underlying civil actions, the plaintiff must prove special damages*." (internal citation omitted) (emphasis added)).

[4] We note that the trial court may admit evidence of earlier or subsequent proceedings in this civil case, but the proceedings may be barred if irrelevant or if they otherwise violate Rule 403. *Hummer v. Pulley, Watson, King & Lischer, P.A.*, 157 N.C. App. 60, 68, 577 S.E.2d 918, 924 (2003). In *Hummer*, evidence of the prior proceeding was allowed because it was used to substantiate the elements of a claim in the case. *Id.* Thus, in *Hummer*, the prior proceedings were relevant to the case at bar and would not confuse the underlying issues at hand. No such relevant purpose is present here.

Exhibit 4, which was admitted, which described Exhibit 3 as "frivolous," and which required Plaintiff to pay $1,300 in fees for initiating the earlier lawsuit. The jury heard that Plaintiff's suit was dismissed, meaning the jury made its decision with full knowledge that Plaintiff had previously raised a lawsuit and that the lawsuit was dismissed, so Defendants' impeachment purpose was not affected. Thus, the trial court's ruling was not an abuse of discretion.

## IV. Conclusion

For the reasons stated above, we find

NO ERROR.

Judges STROUD and DILLON concur.

Report per Rule 30(e).