DAVID NORMAN HUMMER, AND CYNTHIA WAX HUMMER, PLAINTIFFS v. PULLEY, WATSON, KING & LISCHER, P.A., AND TRACY K. LISCHER, INDIVIDUALLY AND AS AGENT OF PULLEY, WATSON, KING & LISCHER, P.A., DEFENDANTS

No. COA02-477

(Filed 1 April 2003)

**1. Attorneys— malpractice—case within a case**

A legal malpractice plaintiff is required to prove the validity and likelihood of success of the underlying case. Here, there was sufficient evidence that the attorney's failure to file a request for a hearing for a teacher in a dismissal proceeding was the proximate cause of the teacher's dismissal where the allegations against the teacher were questionable on the facts and the failure to request a hearing foreclosed judicial review.

**2. Evidence— expert testimony—legal conclusion for jury**

Expert testimony was properly excluded from a legal malpractice claim involving the failure to request a hearing for a teacher in a dismissal proceeding where the expert testimony was offered to tell the jury the result the school board would have reached even if a hearing had been requested and thus the result the jury should reach as a legal conclusion.

**3. Evidence— emotional distress action—plaintiff's spouse's feelings—not an improper opinion**

Testimony by a dismissed teacher's wife in a legal malpractice action against the teacher's attorneys, in response to a question as to how circumstances surrounding her husband's dismissal made her feel, that "all [plaintiff] wanted was his hearing to be heard and I know 'til the day I die he wouldn't have lost his job" was admissible in support of plaintiff's claim for negligent inflic-

tion of emotional distress allegedly resulting from the failure of defendant attorneys to request a hearing for plaintiff.

## 4. Evidence— legal malpractice claim—earlier proceedings— relevant

The trial court did not abuse its discretion in a legal malpractice case by admitting evidence of earlier proceedings. The evidence was relevant to plaintiff's claim that defendants had failed to properly research the legal issues involved in the underlying case, relevant to emotional distress claims as showing the continuation of actions by defendants, and relevant to impeach defendant-attorney's assertion that plaintiff-teacher could have sought judicial review of his dismissal even thought the attorney had not filed a request for a hearing.

## 5. Pleadings— amendment—new defense—no bad faith

The trial court did not abuse its discretion in a legal malpractice case by allowing defendants to amend their answer to include the defense of failure to mitigate damages where there was no evidence of bad faith and plaintiff had been made aware that damages would be at issue.

## 6. Damages and Remedies— failure to mitigate—evidence sufficient

There was sufficient evidence to submit the issue of plaintiff's failure to mitigate damages to the jury in a legal malpractice action.

Appeal by defendants from judgment filed 7 May 2001 and order dated 31 May 2001, and cross appeal by plaintiff David Norman Hummer from judgment filed 7 May 2001 by Judge Wade Barber in Durham County Superior Court. Heard in the Court of Appeals 11 February 2003.

*Law Offices of Willie D. Gilbert, II, P.A., by Willie D. Gilbert, II for plaintiff appellant.*

*Bailey & Dixon, L.L.P., by Gary S. Parsons and Warren T. Savage, for defendant appellants.*

BRYANT, Judge.

Pulley, Watson, King & Lischer, P.A. (the firm) and Tracy K. Lischer (Lischer), individually and as agent of the firm, (collectively,

defendants) appeal from (1) a judgment filed 7 May 2001 entered consistent with a jury verdict finding David Norman Hummer (plaintiff) was damaged by defendants' negligence and awarding damages, and (2) an order dated 31 May 2001 denying defendants' motions for new trial and judgment notwithstanding the verdict. Plaintiff cross-appeals from the judgment filed 7 May 2001.[1]

On 13 February 1998, plaintiff and Cynthia Wax Hummer filed a complaint alleging various causes of action, including breach of contract, legal negligence (specifically including failure to request a hearing, failure to fully research the issues involved, and failure to properly investigate and prepare), negligent misrepresentation, and negligent infliction of emotional distress, all of which related to a claim of legal malpractice against defendants. On 17 March 1998, defendants filed an answer and third-party complaint against Willie D. Gilbert, II, plaintiff's current lawyer, and his law firm. In their answer, defendants asserted affirmative defenses of insulating negligence of plaintiff's current lawyer and plaintiff's contributory negligence. In the third-party complaint, defendants sought indemnification and/or contribution from Mr. Gilbert and his law firm. The trial court ultimately granted plaintiff partial summary judgment on both of defendants' affirmative defenses, granted Mr. Gilbert summary judgment on the third-party complaint, and imposed Rule 11 sanctions on defendants. These rulings of the trial court, except for the imposition of one $2,500.00 sanction, were subsequently upheld by this Court in *Hummer v. Pulley, Watson, King, & Lischer P.A.*, 140 N.C. App. 270, 536 S.E.2d 349 (2000) (*Hummer I*).[2] On 11 April 2001, defendants filed a motion to amend their answer to allege the defense of failure to mitigate damages. The trial court granted this motion on 13 April 2001, the first day scheduled for trial of this case.

At trial, plaintiff introduced evidence tending to show he was a "career status" teacher at Northern Durham High School (the school) on 12 June 1997. While helping to set up for the graduation ceremony, plaintiff was approached by Tommy Parker (Mr. Parker), the school's athletic director. Although plaintiff had formerly coached the women's basketball team, he had resigned that position under pressure from Mr. Parker, and thus Mr. Parker was no longer plaintiff's supervisor. For a prior period of approximately two years, plaintiff

---

1. Cynthia Wax Hummer does not appeal.

2. Consequently, in the Order on Final Pre-Trial Conference, the parties stipulated that the caption of this case omit all references to Willie D. Gilbert, II and Willie D. Gilbert, II, P.A.

and Mr. Parker had been having personal differences. Mr. Parker called out to plaintiff, but plaintiff did not respond and instead waved his hand and walked away as had become his practice during the school year in order to avoid any conflict. Unbeknown to plaintiff, Mr. Parker had been asked to give him instructions from the school principal. Later that day, following the graduation ceremony, plaintiff was working in his classroom when he was approached by the school principal, Dr. Isaac Thomas (Dr. Thomas). Dr. Thomas stated that he needed to talk with plaintiff, and plaintiff inquired if it involved Mr. Parker. Dr. Thomas responded that it did, and plaintiff stated:

> This is ridiculous. I'm out of coaching. He's not my superior. He doesn't need to tell me anything. He needs to leave me alone, I'm going to kick some tail. If you're here to defend him, let me know. If you want to, I can add your name to the list. I can kick your tail too.

Dr. Thomas accused plaintiff of threatening him, ordered plaintiff to leave the school campus, and stated he would call "Personnel" to have plaintiff fired. Plaintiff testified he had no intention of threatening Dr. Thomas, that the phrase "kick some tail" was a coaching expression, and that he had meant he was going to get to the bottom of the problem. When plaintiff was subsequently informed that dismissal proceedings would be initiated, he employed Lischer and the firm to represent him in any such proceedings.

On 6 August 1997, plaintiff received a letter from Ann Denlinger, superintendent for Durham Public Schools, informing him of her intent to recommend to the school board that plaintiff be dismissed based on grounds of insubordination, neglect of duty, failure to fulfill duties and responsibilities of a teacher, and failure to comply with reasonable requirements prescribed by the school board. The letter further informed plaintiff he had fifteen days to request a review of the superintendent's recommendation by a panel of the Professional Review Committee (PRC). It also noted that if plaintiff did not request a hearing, the superintendent's recommendation would be submitted directly to the school board.

Plaintiff hand-delivered the superintendent's letter to Lischer the same day he received it and informed her of his desire to have a hearing before the PRC. Lischer drafted a letter requesting a hearing before the PRC and attached a list of PRC members plaintiff wished to strike from the panel together with a memorandum of law in sup-

port of plaintiff's position detailing how plaintiff's conduct did not support grounds for dismissal. This request for a PRC hearing was, however, never mailed or delivered to the superintendent. As a result, on 9 September 1997, the school board passed a resolution dismissing plaintiff. This resolution was forwarded to plaintiff by the superintendent with a covering letter stating, "in light of your failure to request a hearing on my recommendation for your dismissal, the Board of Education . . . voted to dismiss you from your position as a teacher within the Durham Public Schools." Lischer soon thereafter discovered her error and was unsuccessful in her attempt to seek to have the matter reopened. She ultimately terminated her employment by plaintiff, advising him to seek judicial review of the matter on his own. We note that defendants concede in their brief that, under section 115C-325(n) of the North Carolina General Statutes, judicial review was not available to a career status teacher who is dismissed without requesting a hearing before the board of education. *See* N.C.G.S. § 115C-325 (2001); *see also Hummer I*, 140 N.C. App. at 282-83, 536 S.E.2d at 357 (failure to request school board hearing precluded judicial review).

In regard to the claim for negligent infliction of emotional distress, plaintiff's wife testified in response to the question "How has this entire episode relating to the termination of your husband's career . . . made you feel?" "[I]t made me feel sad. It made me feel angry . . . . All [plaintiff] wanted was his hearing to be heard, and I know 'til the day I die he wouldn't have lost his job." In an effort to show mitigation of his damages, plaintiff also introduced evidence of his unsuccessful attempts to obtain other teaching positions.

Defendants sought to introduce expert testimony from several witnesses who had extensive experience in the practice of education law that the probable outcome of the dismissal proceedings would not have been different had Lischer, in fact, mailed the request for a hearing. The trial court refused to admit this evidence on the ground it invaded the province of the jury as the finder of fact. Defendants did, however, introduce expert testimony regarding the availability of teaching positions in counties around Durham, the difficulty in filling those positions, and plaintiff's potential earning capacity.

After the presentation of evidence, defendants' motion for directed verdict was denied, and the jury returned a verdict finding Lischer or the firm negligent and awarding damages to plaintiff in the total amount of $595,442.00. The jury, however, reduced the amount

of damages awarded to plaintiff by $124,800.00 based on plaintiff's failure to mitigate his damages. Following trial, defendants' motions for judgment notwithstanding the verdict or, in the alternative, a new trial were denied.

---

The issues on direct appeal are whether: (I) plaintiff presented sufficient evidence that Lischer's negligence was the proximate cause of his harm; (II) the trial court erred by not admitting defendants' expert testimony regarding the probable outcome had Lischer not been negligent; (III) admission of testimony by plaintiff's wife of her belief plaintiff would not have lost his job had he received a hearing was unfairly prejudicial; and (IV) admission of evidence of earlier proceedings and post-complaint pleadings in the case were unfairly prejudicial. The issues on cross-appeal are whether: (V) the trial court abused its discretion in allowing defendants' motion to amend the answer and (VI) there was sufficient evidence to support the reduction of damages by the jury.

### Direct Appeal

### I

[1] Defendants initially contend the trial court erred by denying their motions for directed verdict, judgment notwithstanding the verdict, and new trial. Defendants argue plaintiff presented no competent evidence that the school board would have decided not to dismiss plaintiff had a hearing been requested. As such, defendants claim plaintiff did not establish that the failure to request a hearing was the proximate cause of plaintiff's dismissal.

A motion for judgment notwithstanding the verdict is a motion for judgment to be "entered in accordance with an earlier directed verdict motion." *Smith v. Childs*, 112 N.C. App. 672, 682, 437 S.E.2d 500, 507 (1993). As such, the same standards are used in the review of both motions. *Id.* In ruling on these motions, "the trial court must view the evidence in the light most favorable to the nonmovant, resolving all conflicts in his favor and giving him the benefit of every inference that could reasonably be drawn from the evidence in his favor." *Summer v. Allran*, 100 N.C. App. 182, 183, 394 S.E.2d 689, 690 (1990). Motions for directed verdict and judgment notwithstanding the verdict should be denied where there is more than a scintilla of evidence to support each element of a plaintiff's case. *Clark v. Moore*, 65 N.C. App. 609, 610, 309 S.E.2d 579, 580-81 (1983).

HUMMER v. PULLEY, WATSON, KING & LISCHER, P.A.

[157 N.C. App. 60 (2003)]

In a legal malpractice case, a plaintiff is required to prove that he would not have suffered the harm alleged absent the negligence of his attorney. *Rorrer v. Cooke*, 313 N.C. 338, 361, 329 S.E.2d 355, 369 (1985). A plaintiff in order to prove this causation element must establish three things: (1) the underlying claim, upon which the malpractice action is based, was valid; (2) the claim would have resulted in a judgment in the plaintiff's favor; and (3) the judgment would have been collectible or enforceable. *Id.* In other words, a legal malpractice plaintiff is required to prove the viability and likelihood of success of the underlying case as part of the present malpractice claim. This has been referred to as having to prove "a case within a case." *Kearns v. Horsley*, 144 N.C. App. 200, 211, 552 S.E.2d 1, 8 (2001). This is true even if the negligent actions of the attorney resulted in a total foreclosure of the underlying case being heard on its merits. *See id.* at 211-12, 552 S.E.2d at 8-9.

Under the *case within a case* method of proof, the plaintiff in a legal malpractice action presents the evidence in support of the underlying claim before the jury (or fact-finder) in the malpractice action. *See Chocktoot v. Smith*, 571 P.2d 1255, 1258 (Ore. Sup. Ct. 1977). The malpractice jury, in essence, then determines the outcome of the underlying case and from that determination reaches the malpractice verdict. *See id.* A malpractice plaintiff is not required to prove what outcome a particular fact-finder in the underlying case (i.e. the original jury or, in this case, the school board) would have reached. Instead, the malpractice jury must substitute its own judgment in applying the relevant law, as instructed by the trial court, to the facts of the underlying case. *See id.* at 1258-59; *see also Smith*, 112 N.C. App. at 680, 437 S.E.2d at 506 ("[p]roof of legal malpractice necessitates an attempt to show what should have occurred without some error on the part of the attorney").

In this case, plaintiff's dismissal was grounded in allegations of insubordination, neglect of duty, failure to fulfill the duties and responsibilities of a teacher, and failure to comply with reasonable requirements of the school board. "The term insubordination imports a willful disregard of express or implied directions of the employer and a refusal to obey reasonable orders," *Crump v. Bd. of Educ.*, 79 N.C. App. 372, 374-75, 339 S.E.2d 483, 485 (1986) (citation omitted) (internal quotations omitted), and neglect of duty is a failure to perform a duty imposed either by law or contract, *Overton v. Bd. of Educ.*, 304 N.C. 312, 318, 283 S.E.2d 495, 499 (1981).

**HUMMER v. PULLEY, WATSON, KING & LISCHER, P.A.**

[157 N.C. App. 60 (2003)]

Plaintiff presented evidence he was performing his duties as a teacher and was not willfully disobeying any express or implied direction or refusing to obey an order of Dr. Thomas. Mr. Parker was not plaintiff's supervisor and, in fact, plaintiff did not know Mr. Parker was trying to give plaintiff instructions from Dr. Thomas. Plaintiff further testified Dr. Thomas approached him about Mr. Parker, while plaintiff was working in his classroom, and plaintiff had no intent to actually threaten anyone. Furthermore, the superintendent's letter to plaintiff notifying him of his dismissal specifically stated that "in light of [plaintiff's] failure to request a hearing on [the superintendent's] recommendation . . . the Board of Education voted to dismiss [plaintiff] from [his] position as a teacher." This is evidence tending to show plaintiff's dismissal was based more on procedural grounds, and not on the actual facts of the encounter with Dr. Thomas.

We conclude the facts surrounding plaintiff's dismissal as presented in the record, at best, only questionably support the allegations against him. Furthermore, even if we were to assume the school board would have dismissed plaintiff regardless of his efforts to dispute the charges against him, defendants' negligence also foreclosed plaintiff from judicial review and a chance to prove his case in that forum on the same facts. Thus, there was sufficient evidence, viewed in the light most favorable to plaintiff, that defendants' failure to request a hearing was the proximate cause of plaintiff's dismissal. *See Smith*, 112 N.C. App. at 682, 437 S.E.2d at 507.

II

[2] Defendants next contend the trial court committed error by not allowing defense expert testimony to the effect that the school board would have dismissed plaintiff even if defendants had requested a hearing before the PRC. As discussed in Part I, *supra*, it is not necessary to present evidence of what the particular fact-finder would have done in the underlying case. Moreover, expert testimony is inadmissible when the expert is testifying to the legal effect of specific facts. *See Smith*, 112 N.C. App. at 679-80, 437 S.E.2d at 506. Finally, expert testimony simply telling the jury the result they should reach is also inadmissible. *See Williams v. Sapp*, 83 N.C. App. 116, 120, 349 S.E.2d 304, 306 (1986). In this case, the expert testimony proffered by defendants was offered to tell the jury what result the school board would have reached and thus the result the jury should reach as a legal conclusion from the facts and circumstances of plaintiff's dismissal. Therefore, the trial court properly excluded defendants' expert testimony.

## III

**[3]** Defendants also contend the trial court erred in allowing testimony from plaintiff's wife, in response to a question on how the circumstances surrounding her husband's dismissal made her feel, that "all [plaintiff] wanted was his hearing to be heard, and I know 'til the day I die he wouldn't have lost his job." Defendants contend this was an improper expression of opinion, was an attempt to inflame the jury, and unfairly prejudiced defendants on the issue of causation.

The record, however, clearly reveals this was the response of plaintiff's wife to a question directed toward plaintiff's claim for negligent infliction of emotional distress and mental anguish as a result of defendants' negligence, and not the proximate cause of the negligence. The probative value of this testimony on the issues of emotional distress and mental anguish was not substantially outweighed by the danger of unfair prejudice. *See* N.C.G.S. § 8C-1, Rule 403 (2001). Thus, we find no abuse of discretion on the part of the trial court in admitting this testimony. *See Benton v. Hillcrest Foods, Inc.*, 136 N.C. App. 42, 53, 524 S.E.2d 53, 61 (1999) (exclusion of evidence under Rule 403 is left to the sound discretion of the trial court and requires showing decision was so arbitrary it could not have been the product of a reasoned decision).

## IV

**[4]** Defendants finally contend the trial court erred in admitting evidence of earlier proceedings in the case, including defendants' affirmative defenses of contributory negligence and insulating negligence, the third-party complaint against plaintiff's attorney and resulting grant of summary judgment against defendants on those issues, and the subsequent affirmation of summary judgment and sanctions against defendants by this Court in *Hummer I*.

The affirmative defenses and third-party complaint were founded upon defendants' assertion that plaintiff could have sought judicial review of his dismissal, despite statutory law to the contrary, *see Hummer I*, 140 N.C. App. at 282-83, 536 S.E.2d 349, 356-57, and were relevant to plaintiff's claim that defendants had failed to properly research the legal issues involved in his dismissal hearing, *see* N.C.G.S. § 8C-1, Rule 401 (2001). These pleadings were also relevant to plaintiff's negligent infliction of emotional distress claim as they tended to show the continuation of actions by defendants, which allegedly caused emotional distress and mental anguish to both plain-

tiff and his wife. Furthermore, during her testimony, Lischer gave her opinion that she was no longer representing plaintiff during the time for filing a petition for judicial review, and it was the responsibility of plaintiff's attorney to have filed any such petition. Accordingly, evidence of the prior decisions and pleadings in this case was also relevant to impeach Lischer's assertions during her testimony that plaintiff had the ability to seek judicial review, by demonstrating that these assertions were unfounded. Thus, the probative value of this evidence was not substantially outweighed by any danger of unfair prejudice against defendants. Therefore, the trial court did not abuse its discretion in admitting this evidence. *See Benton,* 136 N.C. App. at 53, 524 S.E.2d at 61 (1999).

### *Cross-Appeal*

### V

**[5]** On cross-appeal, plaintiff argues the trial court erred in allowing defendants' motion to amend their answer to include the defense of failure to mitigate damages. Plaintiff contends the trial court abused its discretion by granting the motion filed only twelve days before trial.

The decision to allow a motion to amend a pleading is left to the discretion of the trial court. *House of Raeford Farms, Inc. v. Raeford,* 104 N.C. App. 280, 282, 408 S.E.2d 885, 887 (1991). In this case, we find no abuse of discretion on the part of the trial court in allowing defendants' motion as there is no evidence this motion was filed in bad faith to cause delay and/or unfair prejudice to plaintiff. *See id.* at 282-83, 408 S.E.2d at 887. Further, plaintiff stated he had been made aware damages would be at issue in the case. Therefore, plaintiff's failure to obtain other employment being at issue in the case, plaintiff has failed to show any prejudice against him on this issue by allowance of the motion to amend the pleadings. Accordingly, we overrule this assignment of error.

### VI

**[6]** Plaintiff also contends the trial court erred in allowing the issue of mitigation of damages to go to the jury. He argues there was no evidence to support a finding he did not mitigate his damages. We disagree. Defendants provided expert testimony detailing the wide availability of jobs in the counties around Durham, the difficulty those counties were having in filling vacancies, and plaintiff's earning capacity. Additionally, there was evidence plaintiff failed to obtain

other employment despite the wide availability of other teaching positions. From this, we conclude there was sufficient evidence to submit the issue of mitigation of damages to the jury. *See generally, Haas v. Warren*, 341 N.C. 148, 152-55, 459 S.E.2d 254, 256-58 (1995) (evidence sufficient to reach a jury in a legal malpractice claim). We thus conclude there was no error in the entry of judgment in favor of plaintiff and affirm the denial of defendants' motion for judgment notwithstanding the verdict or, in the alternative, a new trial.

No error.

Judges TYSON and ELMORE concur.