Fleming v. Horner, 2021 NCBC 22.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20 CVS 3348

PETER FLEMING,

     Plaintiff,

v.

ADAM HORNER and HAMILTON,
STEPHENS, STEELE + MARTIN,
PLLC,

     Defendants.

**ORDER AND OPINION
ON MOTION FOR JUDGMENT ON
THE PLEADINGS**

1.    **THIS MATTER** is before the Court on defendants Adam Horner ("Horner") and Hamilton, Stephens, Steele + Martin, PLLC's ("HSSM") (together, "Defendants") Motion for Judgment on the Pleadings (the "Motion") filed on 9 September 2020 pursuant to Rule 12(c) of the North Carolina Rules of Civil Procedure (the "Rule(s)"). (Mot., ECF No. 36.) Defendants seek complete dismissal of plaintiff Peter Fleming's ("Fleming") Complaint. (Compl., ECF No. 3.) For the reasons set forth in this Order and Opinion, the Court **DENIES** the Motion.

> *Rabon Law Firm, PLLC, by Charles H. Rabon, Jr.; and Bland Richter LLP, by Eric S. Bland and Ronald L. Richter, Jr., for plaintiff Peter Fleming.*
>
> *Cranfill Sumner & Hartzog, LLP, by Ryan D. Bolick, for defendants Adam Horner and Hamilton, Stephens, Steele + Martin, PLLC.*

Robinson, Judge.

# I.    INTRODUCTION

2.    This action arises out of Defendants' alleged negligent legal representation of Fleming in a previous lawsuit filed by General Fidelity Insurance Company ("GFIC") against Fleming, in which GFIC was ultimately awarded $12,849,193.20 in damages.  Based on Defendants' alleged negligence, Fleming has asserted a legal malpractice claim against them.  Fleming contends in his Complaint that Defendants breached the duty of care they owed to Fleming as his lawyers and that their negligence proximately resulted in Fleming being held personally liable for the damages awarded to GFIC.

# II.    FACTUAL BACKGROUND

3.    The Court does not make findings of fact on a Rule 12(c) motion for judgment on the pleadings.  Instead, the Court will recite the factual allegations that are relevant to the Court's determination of the Motion.[1]

## A.    **The Parties**

4.    Fleming is a resident of Mecklenburg County, North Carolina.  (Compl ¶ 1.) At all relevant times, Fleming worked in the insurance business.  (Compl. ¶ 5.)

---

[1] The factual background recited by the Court is drawn from Fleming's Complaint; the exhibits attached to Defendants' Answer, (Answer Exs. 1–3, ECF No. 12); and the exhibits attached to Fleming's brief opposing the Motion, which concern matters that are the subject of Fleming's Complaint, (Mem. in Opp'n Exs. A & B, ECF Nos. 39–39.2).  The Court may properly consider these exhibits without converting the Motion into a Rule 56 summary judgment motion.  *See Cash v. State Farm Mut. Auto. Ins. Co.*, 137 N.C. App. 192, 202 (2000); *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60–61 (2001); *Reese v. City of Charlotte*, 196 N.C. App. 557, 561 (2009); *QUB Studios, LLC v. Marsh*, 262 N.C. App. 251, 261 (2018).

5. Horner is a resident of Mecklenburg County, North Carolina. (Compl. ¶ 2.) At all relevant times, Horner worked for HSSM as an attorney licensed to practice law in North Carolina. (Compl. ¶¶ 2, 34.)

6. HSSM is a professional limited liability company organized and existing under the laws of North Carolina that operates as a law firm. (Compl. ¶ 3.)

## B. The Events Leading Up to the GFIC Action

7. In March 2005, GFIC, a South Carolina-based insurance company, entered into a reinsurance agreement with State National Insurance Company ("SNIC") under which GFIC reinsured 100% of the losses incurred by SNIC in connection with insurance policies issued through SNIC. (Compl. ¶ 7.) Around that same time, WFT, Inc. ("WFT"), an insurance company owned and controlled by Fleming, entered into an agency agreement with SNIC under which WFT was authorized to underwrite and issue insurance policies through SNIC and settle claims in accordance with the restrictions and guidelines established by GFIC and SNIC. (Compl. ¶ 8.) The reinsurance and agency agreements were both terminated on 24 July 2009, which resulted in a dispute between WFT and GFIC regarding money GFIC claimed WFT owed to GFIC. (Compl. ¶¶ 10–12.)

8. Pursuant to an arbitration provision contain within both agreements, in June 2010, WFT and GFIC initiated arbitration proceedings in Texas. (Compl. ¶ 13.) Fleming was not individually made a party to the arbitration. (Compl. ¶ 14.)

9. On 17 November 2011, while the arbitration was pending, Fleming formed a new company, Blessmatch Marine Insurance Services, Inc. ("Blessmatch"), in an

attempt to avoid the negative effect the arbitration was having on WFT's reputation and business operations. (Compl. ¶¶ 18–19.) WFT transferred its assets to Blessmatch, resulting in Blessmatch obtaining control over WFT's former website domain name, office and staff. (Compl. ¶¶ 21–23.) Fleming's efforts to preserve his business were unsuccessful and Blessmatch ceased operations on 31 May 2013. (Compl. ¶ 24.)

10. On 2 August 2013, an arbitration panel rendered a final award in favor of GFIC. (Compl. ¶¶ 25–26; Answer Ex. 1.) Then, on 27 December 2013, a Texas court entered judgment on the arbitration award and ordered WFT to pay GFIC $2,653,552.58 in damages (the "Texas Judgment"). (Compl. ¶ 26; Answer Ex. 1.) The Texas Judgment provided, in part, that it disposed of "all claims against all parties," effectively rejecting GFIC's attempt in the arbitration to pierce WFT's corporate veil and make Fleming personally liable for the arbitration award. (Compl. ¶ 27; Answer Ex. 1.)

C. **The GFIC Action**

11. On 15 May 2014, GFIC filed a lawsuit (the "GFIC Action") in Mecklenburg County Superior Court against WFT, Blessmatch, and Fleming,[2] seeking to domesticate the Texas Judgment. (Compl. ¶¶ 28, 31; Answer Ex. 2.) Through the GFIC Action, GFIC sought to pierce WFT and Blessmatch's corporate veils and make Fleming personally liable. (Compl. ¶ 31; Answer Ex. 2.) Based on the transfer of assets from WFT to Blessmatch, GFIC argued that Fleming should be held personally

---

[2] The GFIC Action was captioned as *General Fidelity Insurance Company v. WFT, Inc., et al.*, 14-CVS-9043. (Compl. ¶ 28; Answer Ex. 2.)

liable for breach of fiduciary duty, constructive fraud, fraudulent transfer of assets, unfair and deceptive trade practices, and facilitation of fraud. (Compl. ¶¶ 31–32, 51; Answer Ex. 2.)

12. On 25 August 2015, Fleming retained Horner, who was then a partner at HSSM, as his counsel for the GFIC Action. (Compl. ¶¶ 34, 38.) Fleming told Horner about the history of the prior Texas proceedings, as well as GFIC's unsuccessful attempt to pierce WFT's corporate veil during the arbitration. (Compl. ¶¶ 38–39.) In addition, at Horner's request, Fleming provided Horner with years of bank statements and other financial records of WFT and Blessmatch. (Compl. ¶ 42.) In response to Fleming's concern about his personal exposure in the GFIC Action, Horner assured Fleming that it would be "practically 'impossible' [for GFIC] to pierce [WFT's] corporate veil" and that the financial information provided by Fleming was "all [Horner] needed" to defend Fleming in the GFIC Action. (Compl. ¶¶ 41, 43.)

13. Aside from the financial information Fleming provided to Horner, Defendants never made any effort to gather additional evidence, and Defendants failed to inform Fleming of relevant defenses and also failed to craft a defense strategy for the GFIC Action. (Compl. ¶¶ 44–51, 113.) After two years of litigation, Fleming's deposition in the GFIC Action took place on 22 July 2016. (Compl. ¶ 52.)

14. Five days later, Horner and HSSM withdrew from their representation of Fleming in the GFIC Action on the grounds that Fleming was not current on his legal fees. (Compl. ¶¶ 52–54.) Following Horner and HSSM's withdrawal, Fleming was without legal counsel for a period of time in the GFIC Action. (Compl. ¶ 57.)

15. In July 2017, GFIC moved for summary judgment on its claims. (Compl. ¶ 58.) Fleming contacted Horner and HSSM for direction on GFIC's summary judgment motion even though they were no longer representing him in the GFIC Action. (Compl. ¶ 59.) On 3 August 2017, after Fleming paid the outstanding charges due to HSSM, Horner and HSSM resumed representing Fleming, though their representation was limited to only defending Fleming against GFIC's pending summary judgment motion. (Compl. ¶¶ 60–62.)

16. According to Fleming, Horner was the senior attorney at HSSM most familiar with the GFIC Action and was thus the attorney who should have represented Fleming at the summary judgment hearing. (Compl. ¶ 65.) Horner, however, was scheduled to be out of town for a vacation on the hearing date, 15 August 2017, and therefore, he had a less experienced associate at HSSM, Laura Barringer ("Barringer"), handle the hearing. (Compl. ¶¶ 65, 68–71.) Barringer moved for a continuance of the hearing until a later motions calendar, but the motion was denied for failure to comply with the Mecklenburg County Local Rules. (Compl. ¶¶ 65–66.) The trial court nonetheless granted a brief continuance of two days to allow Barringer to get up to speed on the case, and the hearing then took place on 17 August 2017. (Compl. ¶ 67.)

17. Barringer did not submit to the trial court any affidavits or a brief in opposition to GFIC's summary judgment motion. (Compl. ¶ 72.) Although Barringer did send a letter to the presiding judge, the Honorable Eric L. Levinson ("Judge Levinson"), the day before the 17 August 2017 hearing, the letter only outlined

Fleming's deposition testimony and did not cite to any cases or statutes. (Compl ¶ 73; Mem. in Opp'n Ex. A.)

18. At the hearing, Barringer was unprepared to address the questions raised by the trial court. (Compl. ¶ 82.) Horner did not attend the hearing. (Compl. ¶ 68.) In opposing GFIC's summary judgment motion, Barringer asserted that attorneys, accountants, board members, and employees could all support Fleming's deposition testimony, but no affidavits from these individuals were provided to Judge Levinson. (Compl. ¶¶ 83–84.)

19. Fleming alleges that Horner and HSSM's failure to properly supervise Barringer resulted in her failing to obtain and present to Judge Levinson the materials needed to adequately oppose GFIC's summary judgment motion and her being generally unprepared for the hearing. (Compl. ¶¶ 74–85.)

20. Following the hearing, Judge Levison asked counsel for the parties to confer and provide him with their respective views on what constituted the record upon which he could rely to rule on GFIC's summary judgment motion. (Compl. ¶¶ 86–88; Mem. in Opp'n Ex. A.) After counsel reported to Judge Levinson by email that they could not reach an agreement on what constituted the record, Judge Levinson responded that he planned to set another hearing on GFIC's summary judgment motion and noted the absence of Fleming's lead HSSM attorney (Horner) at the first hearing, which involved six million dollars in potential liability. (Compl. ¶¶ 89–92; Mem. in Opp'n Ex. A.) The second hearing took place on 13 November 2017. (Compl. ¶¶ 98–99.)

21.     Prior to the second hearing, Horner left HSSM to work for the law firm representing GFIC in the GFIC Action and, according to Fleming, Horner never informed Fleming of his departure or asked for Fleming's consent. (Compl. ¶¶ 100–02.) HSSM reassigned Fleming's defense to a different partner. (Compl. ¶¶ 103–04.)

22.     Fleming's new HSSM lawyer did not submit any additional materials in opposition to GFIC's summary judgment motion in advance of or at the second hearing on the motion, notwithstanding Judge Levinson's request for a more robust record. (Compl. ¶¶ 104–05.)

23.     On 12 January 2018, Judge Levinson issued his order granting in part and denying in part GFIC's summary judgment motion. (Compl. ¶ 106; Answer Ex. 3.) Judge Levinson's order contained four separate judgments against Fleming personally: (1) for liability on the Texas Judgment, jointly and severally with WFT and Blessmatch, in the amount of $3,180,264.59 plus interest and the costs of the action, which was based on the piercing of WFT and Blessmatch's corporate veils; (2) for liability on the breach of fiduciary duty claim in the amount of $3,180,264.59 plus interest and the costs of the action; (3) for liability on the constructive fraud claim in the amount of $3,180,264.59 plus interest and the costs of the action; and (4) for liability on the fraudulent transfer claim, jointly and severally with WFT and Blessmatch, in the amount of $3,180,264.59 plus interest and the costs of the action. (Compl. ¶ 106; Answer Ex. 3.) Judge Levinson consolidated these four judgments into a single judgment so that GFIC would not receive a double recovery and awarded GFIC total damages of $3,180,264.59 plus interest and the costs of the action.

(Compl. ¶ 106; Answer Ex. 3.)  Lastly, Judge Levinson denied GFIC's motion for summary judgment on its unfair and deceptive trade practices claim.  (Compl. ¶ 107; Answer Ex. 3.)

24.    A bench trial before a different presiding judge, the Honorable Forrest D. Bridges ("Judge Bridges"), was held on 12 February 2018 on the remaining unfair and deceptive trade practices claim.  (Compl. ¶ 108; Mem. in Opp'n Ex. B.)  The case was tried on the existing record, and no live testimony was offered.  (Compl. ¶ 108.)

25.    Based on the judgment entered by Judge Levinson, Judge Bridges ruled in favor of GFIC on the unfair and deceptive trade practices claim and rendered a final judgment awarding GFIC treble damages plus interest, the costs of the action, and attorney fees.  (Compl. ¶¶ 108–09; Mem. in Opp'n Ex. B.)

26.    Fleming is now personally liable for $12,849,193.20 in damages stemming from the GFIC Action.  (Compl. ¶ 109.)

**D.    Fleming's Legal Malpractice Claim against Defendants**

27.    In the present action, Fleming alleges that Horner and HSSM's poor legal representation of Fleming in the GFIC action is the direct and proximate cause of the $12,849,193.20 judgment rendered personally against him.  (Compl. ¶¶ 114–15.)  In paragraph 113 of the Complaint, Fleming alleges that Defendants breached the duties they owed to him as his lawyers by engaging in the following negligent conduct:

a. In failing to conduct an adequate investigation into the underlying Texas [a]rbitration;

b. In failing to plead *res judicata* and/or issue/claim preclusion as a defense to the [GFIC] Action in order to avoid piercing the corporate veil;

c.  In failing to advise Fleming at the commencement of the [GFIC] Action to have Blessmatch stipulate to the Texas Judgment under the theory of successor corporate liability;

d.  In failing to develop any strategy to defend the [GFIC] Action;

e.  In failing to develop any evidence, including but not limited to, evidence of the separate corporate existence of WFT and Blessmatch, in defense of the [GFIC] Action;

f.  In failing to prepare [Fleming] for deposition;

g.  In failing to engage or recommend the engagement of experts, particularly experts in corporate governance or finance, in opposition to [GFIC's motion for] summary judgment;

h.  In failing to present any argument and/or evidence in opposition to [GFIC's motion for] summary judgment, despite having been afforded multiple opportunities to do so;

i.  In failing to supervise associate attorneys who were either inexperienced and/or unfamiliar with the [GFIC] Action to be able to provide competent representation at the hearing;

j.  HSSM's failure to provide proper supervision of Horner;

k.  Horner's failure to supervise Barringer;

l.  In failing to communicate with [Fleming] in accordance with Rule 1.4 of the North Carolina Rules of Professional Conduct;

m.  In failing to provide competent representation to [Fleming] in accordance with Rule 1.1 of the North Carolina Rules of Professional Conduct; [and]

n.  In failing to pursue the defense of the [GFIC] Action timely and zealously in accordance with Rule 1.3 of the North Carolina Rules of Professional Conduct[.]

(Compl. ¶ 113.)

28.  Fleming seeks actual damages from Defendants based on their alleged negligence, as well as punitive damages pursuant to N.C.G.S. § 1D-1.  (Compl. 16.)

## III.    PROCEDURAL BACKGROUND

29.    Fleming initiated this action by filing his Complaint on 24 February 2020. (Compl.)  The case was designated as a mandatory complex business case by order of the Chief Justice of the Supreme Court of North Carolina and assigned to the undersigned on 26 March 2020.  (ECF Nos. 1–2.)

30.    On 1 June 2020, Defendants filed their Answer to the Complaint.  (Answer.)

31.    Defendants filed the Motion on 9 September 2020.

32.    After full briefing, the Court held a hearing by video conference on the Motion on 4 November 2020, at which all parties were represented by counsel.

33.    The Motion is now ripe for resolution.

## IV.    LEGAL STANDARD

34.    "A [Rule 12(c)] motion for judgment on the pleadings should not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law."  *Carpenter v. Carpenter*, 189 N.C. App. 755, 761 (2008); *see also Ragsdale v. Kennedy*, 286 N.C. 130, 137 (1974).  "[T]he court cannot select some of the alleged facts as a basis for granting the motion on the pleadings if other allegations, together with the selected facts, establish material issues of fact."  *J. F. Wilkerson Contracting Co. v. Rowland*, 29 N.C. App. 722, 725 (1976).

35.    The Court must read the pleadings in the light most favorable to the nonmoving party, and

> [a]ll well pleaded factual allegations in the nonmoving party's pleadings
> are taken as true and all contravening assertions in the movant's

pleadings are taken as false. All allegations in the nonmovant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial, are deemed admitted by the movant for purposes of the motion.

*Ragsdale*, 286 N.C. at 137 (citations omitted). "Judgment on the pleadings is not favored by the law[.]" *Huss v. Huss*, 31 N.C. App. 463, 466 (1976).

## V. ANALYSIS

36. A plaintiff in a legal malpractice action "is required to prove that he would not have suffered the harm alleged absent the negligence of his attorney." *Hummer v. Pulley, Watson, King & Lischer, P.A.*, 157 N.C. App. 60, 66 (2003). Accordingly, "the plaintiff must allege and prove (1) that the attorney breached the duties owed to his client and that this negligence (2) proximately caused (3) damage to the plaintiff." *Wood v. Hollingsworth*, 166 N.C. App. 637, 641–42 (2004) (cleaned up). Ultimately, the plaintiff has to establish the "viability and likelihood of success of the underlying case" that serves as the basis for the plaintiff's present legal malpractice claim. *Hummer*, 157 N.C. App. at 66. "This has been referred to as having to prove 'a case within a case.'" *Id.* (citation omitted).

37. Defendants first argue that Fleming's legal malpractice claim against them should be dismissed because Fleming has failed to plead sufficient facts to support his allegation that Defendants' alleged negligent legal representation of Fleming was the proximate cause of the damages awarded in favor of GFIC and against Fleming in the underlying GFIC Action. (Br. in Supp. 1, 9–12, ECF No. 37.) More specifically, Defendants contend that Fleming was required, but failed, to allege that he would have ultimately prevailed in the GFIC Action or that a fact existed that would have

prevented the entry of summary judgment against him in that underlying case. (Br. in Supp. 11.) Defendants are mistaken.

38.    In *Wood*, 166 N.C. App. 637, the North Carolina Court of Appeals considered whether a plaintiff had alleged sufficient facts to support her legal malpractice claim. There, the Court stated the following:

> In the instant case, plaintiff's complaint alleges that [her former lawyer] was negligent in that she failed to "comply with the prevailing standard of care owed by a practitioner in her profession," and failed to "exercise reasonable care and diligence in the application of her knowledge and skill as an attorney[.]" Plaintiff's complaint contains specific acts of [her former lawyer's] alleged negligence, including the failure to follow her client's instructions, the failure to notify her client that a lawsuit had not been filed on her behalf, the failure to advise her client of the tolling of the applicable statute of limitations, and the failure to protect her client's interests by timely filing a lawsuit on her behalf. Plaintiff's complaint further provides that, "as the direct and proximate result of the negligent, unlawful and careless acts" of defendants, plaintiff suffered damages in an amount in excess of $10,000. Thus, taking plaintiff's allegations to be true for the limited purpose of testing the adequacy of plaintiff's complaint, we conclude that plaintiff has sufficiently stated a claim for negligence in legal representation.

*Id.* at 641. Moreover, on the issue of proximate cause, the Court made clear that "[w]hether defendants' alleged negligence in fact caused plaintiff's injury [was] a question for the trier of fact" and not a question of law for the Court to decide at the pleading stage. *Id.* at 642.

39.    In this case, Fleming's Complaint contains allegations that are similar to the allegations in *Wood* and are therefore sufficient at this stage of the proceeding to maintain a legal malpractice claim. In paragraph 112 of the Complaint, Fleming alleges that "Defendants owed duties to Fleming, including the duty to possess and to exercise the same degree of care, skill and learning as is possessed by a reasonable

and competent attorney under the same or similar circumstances." And as described more fully above, the Complaint as a whole, and Paragraph 113 in particular, sets forth a litany of alleged negligent acts by Defendants throughout their legal representation of Fleming in the GFIC Action, including their failure to submit any evidence or a brief in opposition to GFIC's summary judgment motion. In addition, paragraph 114 states that "[b]ut for the conduct of the Defendants, Fleming would not be saddled with a personal judgment in the amount of $12,849,193.20," and paragraph 115 states that "[a]s a direct and proximate result of the conduct of the Defendants, Fleming has suffered damages and continues to suffer damages in an amount not less than $12,849,193.20, which sum continues to grow with post-judgment interest."

40. These allegations, when viewed together in the light most favorable to Fleming, sufficiently satisfy the pleading requirements for a legal malpractice claim and also give rise to a factual question of whether Defendants' alleged negligence in the GFIC Action, including their alleged failure to adequately oppose GFIC's summary judgment motion, was a proximate cause of Fleming's alleged damages. And at the pleading stage of this litigation, it would be improper for the Court to resolve this question of fact. *See Wood*, 166 N.C. App. at 642 (explaining that "proximate cause is ordinarily a question of fact for the jury, to be solved by the exercise of good common sense in the consideration of the evidence of each particular case" (quoting *Williams v. Power & Light Co.*, 296 N.C. 400, 403 (1979))). Thus, the Court denies the Motion to the extent that it seeks dismissal of Fleming's legal

malpractice claim based on Defendants' contention that Fleming has not alleged sufficient facts to support the proximate cause requirement.

41. Defendants next argue that the allegations in Fleming's Complaint establish that he was, in fact, liable to GFIC for breach of fiduciary duty, constructive fraud, and fraudulent transfer in the underlying GFIC Action, and thus, Defendants' alleged negligence could not have been a proximate cause of Fleming's alleged damages. (Br. in Supp. 12–21.) In effect, then, Defendants ask this Court to decide as a matter of law the likelihood of Fleming's success in the underlying GFIC Action, i.e., the case within a case. The Court does not believe it can properly engage in such a determination at this stage of the litigation and thus declines Defendants' request.

42. In *Hummer*, the North Carolina Court of Appeals explained that

> [u]nder the case within a case method of proof, the plaintiff in a legal malpractice action presents the evidence in support of the underlying claim before the jury (or fact-finder) in the malpractice action. . . . The malpractice jury, in essence, then determines the outcome of the underlying case and from that determination reaches the malpractice verdict. . . . A malpractice plaintiff is not required to prove what outcome a particular fact-finder in the underlying case . . . would have reached. Instead, the malpractice jury must substitute its own judgment in applying the relevant law, as instructed by the trial court, to the facts of the underlying case.

157 N.C. App. at 66 (citations omitted).

43. Accordingly, Fleming will ultimately have to present evidence to support his allegation that Defendants' legal representation in the underlying GFIC Action was negligent, and after that, the fact finder (if it gets to that stage) will use its own judgment to determine the outcome of the GFIC Action. Therefore, in the absence of a well-developed evidentiary record, it would be improper for the Court to rule, as

urged by Defendants, that Fleming was, in fact, liable for any of the claims litigated in the GFIC Action, especially because, as discussed above, Fleming has alleged facts that, if proven, could support his claim that Defendants' negligence proximately damaged him in the GFIC Action. Thus, the Court denies the Motion to the extent that it seeks dismissal of Fleming's legal malpractice claim on the grounds that his allegations affirmatively establish his liability as a matter of law in the underlying GFIC Action.[3]

44. Defendants also argue that Fleming has failed to allege sufficient facts to state a claim for legal malpractice against Defendants as to their defense of the unfair and deceptive trade practices claim asserted against Fleming in the GFIC Action and that the allegations in the Complaint establish that Fleming was liable for this claim as a matter of law. (Br. in Supp. 21–24.)

45. Based on the same considerations discussed above regarding Fleming's liability for the breach of fiduciary duty, constructive fraud, and fraudulent transfer claims asserted in the GFIC Action, the Court declines to conclude as a matter of law that Fleming was, in fact, liable for the unfair and deceptive trade practices claim.

46. In addition, the Court disagrees with Defendants' contention that Fleming has failed to allege sufficient facts to state a claim for legal malpractice as to the defense of the unfair and deceptive trade practices claim in the GFIC Action. Defendants argue that they cannot be held liable for any damages to Fleming that resulted from the judgment on GFIC's unfair and deceptive trade practices claim

---

[3] Tellingly, Defendants do not cite to any cases where a court determined that a plaintiff was liable in the case within a case as a matter of law at the pleading stage.

because they did not represent Fleming at the bench trial on this claim. (Br. in Supp. 21–22.)

47.    However, as reflected in Fleming's Complaint and acknowledged by Defendants in their supporting brief, the judgment in the GFIC Action on GFIC's unfair and deceptive trade practices claim was predicated on the summary judgment order entered by Judge Levinson. (*See* Br. in Supp. 22.) Indeed, Judge Bridges' determination that Fleming was liable for the unfair and deceptive trade practices claim was based on Judge Levinson's earlier determination that Fleming was liable for the breach of fiduciary duty, constructive fraud, and fraudulent transfer claims. (*See* Mem. in Opp'n Ex. B.) Therefore, by claiming that Defendants' negligence was the proximate cause of the final judgment entered by Judge Bridges, Fleming's claim also encompasses what Defendants allegedly did (or failed to do) at the summary judgment stage, where they did represent Fleming.

48.    As such, the Court denies the Motion to the extent that Defendants argue that Fleming has failed to allege sufficient facts to state a claim for legal malpractice as to the defense of the underlying unfair and deceptive trade practices claim in the GFIC Action and that the allegations in the Complaint show that he was liable for this claim as a matter of law.

49.    Lastly, Defendants seek dismissal of Fleming's request for punitive damages in his prayer for relief. They argue that Fleming has failed to plead factual allegations to support a finding of fraud, malice, or willful or wanton conduct as required by N.C.G.S § 1D-15. (Br. in Supp. 24.)

50.     Fleming, however, has expressly alleged that Defendants' conduct was willful and wanton, (Compl. ¶ 113), and Fleming's other factual allegations, if proven, could potentially support a finding that Defendants' alleged conduct was willful or wanton such that punitive damages are warranted. *See, e.g., Cockerham-Ellerbee v. Town of Jonesville*, 190 N.C. App. 150, 157 (2008) (stating that whether clear and convincing evidence of willful or wanton conduct exists is generally a question of fact for the jury).

51.     Therefore, the Court denies the Motion to the extent that it seeks dismissal of Fleming's request for punitive damages. Defendants are free to revisit this issue after discovery and on a more developed record.

## VI.     CONCLUSION

52.     For the foregoing reasons, the Court hereby **DENIES** the Motion. To be clear, the Court denies the Motion based on the governing standard of review for an early stage Rule 12(c) motion. This ruling should therefore not be construed as an opinion or forecast on whether Fleming will ultimately prevail on his legal malpractice claim against Defendants.

        **SO ORDERED**, this the 1st day of April, 2021.


                                        /s/ Michael L. Robinson
                                        Michael L. Robinson
                                        Special Superior Court Judge
                                          for Complex Business Cases