IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-192

Filed 5 November 2025

Wake County, No. 24CV013594-910

CAPITOL CITY HOMES, LLC, JASON D. MORROW, and CHARLES MCDONALD, Plaintiffs,

v.

STARLIGHT HOMES NORTH CAROLINA, L.L.C., JAMES M. SACK, THE SACK LAW FIRM, P.C., and SAGE BUILT, LLC, Defendants.

Appeal by Defendants James M. Sack and The Sack Law Firm, P.C., from order entered 21 October 2024 by Judge A. Graham Shirley in Wake County Superior Court. Heard in the Court of Appeals 23 September 2025.

> *Ward and Smith, P.A., by Christopher S. Edwards, Michael J. Parrish, and Mark S. Wigley, and MichieHamlett, PLLC, by Les S. Bowers, for Plaintiffs-Appellees.*

> *Cranfill Sumner LLP, by Steven A. Bader and Ryan D. Bolick, for Defendants-Appellants James M. Sack and The Sack Law Firm, P.C.*

COLLINS, Judge.

Defendants, James M. Sack and The Sack Law Firm (collectively, "Mr. Sack"), appeal from the trial court's order denying their motion to dismiss the legal malpractice claim brought by Plaintiffs, Capitol City Homes, LLC, and two of its owners, Jason D. Morrow and Charles McDonald (collectively, "Capitol City"). Mr. Sack argues that the legal malpractice claim cannot be pursued at the same time as

the underlying breach of contract claim. Capitol City moves to dismiss this appeal as untimely. Because Mr. Sack has failed to show we have jurisdiction to hear this appeal from an interlocutory order, we dismiss the appeal.

## I. Background

Capitol City is in the business of building residential homes in North Carolina. On 19 January 2021, Capitol City entered into a purchase agreement with Green Hill Drive, LLC, wherein Green Hill agreed to sell 100 subdivision lots to Capitol City for $50,000 per lot ("January 2021 Green Hill Agreement").

In May 2021, Starlight Homes North Carolina, L.L.C., expressed an interest in purchasing lots from Capitol City. Capitol City and Starlight created a shared Dropbox folder, wherein Capitol City and Starlight could exchange and view pertinent documents. The Dropbox had a sub-folder specifically designated for Capitol City's contract with Green Hill and included documents relating to that contract. Capitol City retained Mr. Sack to represent it in its potential deal with Starlight.

In August 2021, Mr. Sack exchanged with Starlight's attorney a draft agreement and other related documents. Those documents included "a schedule of Capitol City['s] [] 'real estate contracts' to be assigned to Starlight." This schedule listed the January 2021 Green Hill Agreement.

In September 2021, Green Hill told Capitol City that it would no longer be able to sell lots for $50,000 and proposed a new agreement that included a price of $65,000

per lot. Capitol City told Starlight of Green Hill's new proposal. On 20 September 2021, Starlight approved "the change to the existing January 2021 Green Hill [] Agreement to increase the base price of lots to $65,000 without installation of concrete pads." An updated version of the agreement between Capitol City and Green Hill was signed on 28 September 2021 ("September 2021 Green Hill Agreement"). That same day, Capitol City uploaded a copy of the signed September 2021 Green Hill Agreement to its shared Dropbox folder with Starlight.

On 1 October 2021, Mr. Sack emailed Capitol City "a copy of the then-existing draft of the 'lot contract list' for review" by Capitol City. Capitol City responded and told Mr. Sack to include the "New Contract (revised lot purchase price) Attached for Green Hill" and attached a copy of the September 2021 Green Hill Agreement to its email. Accordingly, Mr. Sack updated the schedule of Capitol City's real estate contracts to reflect the September 2021 Green Hill Agreement.

Mr. Sack shared these documents with Starlight. On 24 November 2021, Starlight's counsel emailed back to Mr. Sack a "red-lined" version of the documents. This red-lined version deleted the reference to the September 2021 Green Hill Agreement and, in its place, added the following reference to the January 2021 Green Hill Agreement: "Purchase Agreement (Green Hill Subdivision) by and between Green Hill Drive, LLC, as seller, and Capitol City Homes, LLC, as buyer, dated January 19, 2021."

A week later, on 1 December 2021, Capitol City[1] and Starlight executed a purchase and sale agreement. According to Capitol City, the purchase and sale agreement "was jointly prepared by and was reviewed and approved" by Mr. Sack. The real estate contracts schedule referenced in the executed purchase and sale agreement lists the January 2021 Green Hill Agreement, not the September 2021 Green Hill Agreement.

Pursuant to the terms of the purchase and sale agreement, $800,000 was deducted from Starlight's purchase price and was deposited with an escrow agent. Capitol City was to receive $400,000 of these escrowed funds on 1 December 2023.

On 30 November 2023, one day before the escrowed funds were to be released to Capitol City, Starlight issued a claim notice against the escrowed funds. Starlight asserted that it was not aware of any modification of the contract between Capitol City and Green Hill and that it expected to enforce the January 2021 Green Hill Agreement to purchase the lots for $50,000 each. Over Capitol City's objections, the escrow agent refused to release the funds.

Capitol City commenced this action by filing a complaint on 20 May 2024, seeking a declaratory judgment that "Starlight Homes' Claim Notice is without merit, that no breach or material breach of the Purchase and Sale Agreement has occurred, that Starlight Homes has suffered no damage or 'Indemnity Loss,' and that the

---

[1] Sage Built, LLC, which owns an interest in Capitol City, was also a party to the December 2021 purchase and sale agreement but is not a party to this appeal.

Escrowed Funds should be released as though no Claim Notice were made." Also in its complaint, Capitol City brought a legal malpractice claim against Mr. Sack.

Mr. Sack filed a motion to dismiss pursuant to North Carolina Civil Procedure Rules 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted. The trial court denied Mr. Sack's motion to dismiss on 21 October 2024. Mr. Sack timely appealed.

Capitol City moved to dismiss the appeal for lack of appellate jurisdiction.

## II. Appellate Jurisdiction

Mr. Sack appeals from the trial court's interlocutory order denying his motion to dismiss. "An order or judgment is interlocutory if it is made during the pendency of an action and does not dispose of the case but requires further action by the trial court in order to finally determine the entire controversy." *N.C. Dep't. of Transp. v. Page*, 119 N.C. App. 730, 733 (1995) (citation omitted). "Generally, there is no right of immediate appeal from interlocutory orders and judgments." *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725 (1990).

A party may immediately appeal an interlocutory order, however, "when the order deprives the appellant of a substantial right which would be jeopardized absent a review prior to a final determination on the merits." *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 379 (1994) (quotation marks and citations omitted). A substantial right is "a legal right affecting or involving a matter of substance as distinguished from matters of form." *Oestreicher v. Am. Nat'l Stores, Inc.*, 290 N.C.

118, 130 (1976) (citation omitted). It must affect those interests that a party "is entitled to have preserved and protected by law." *Id.* (citation omitted). The substantial right test "is more easily stated than applied[;] . . . it is usually necessary to resolve the question in each case by considering the particular facts of that case and the procedural context in which the order from which appeal is sought was entered." *Hanesbrands Inc. v. Fowler*, 369 N.C. 216, 219 (2016) (quotation marks and citation omitted).

Here, Mr. Sack argues that the denial of his motion to dismiss deprives him of his substantial rights "to defend a legal malpractice case using the 'case within a case' method of proof" and "to avoid the risk of inconsistent verdicts." We disagree.

## A. Case within a case "method of proof"

A plaintiff in a legal malpractice action must prove the merits and damages of the underlying case or matter in which the lawyer represented them in addition to proving malpractice by the lawyer. *See Hummer v. Pulley, Watson, King & Lischer, P.A.*, 157 N.C. App. 60, 66 (2003) ("[A] legal malpractice plaintiff is required to prove the viability and likelihood of success of the underlying case as part of the present malpractice claim."). "This has been referred to as having to prove 'a case within a case.'" *Id.* (*quoting Kearns v. Horsley*, 144 N.C. App. 200, 211 (2001)). Generally, a plaintiff must show that, but for the alleged malpractice, he or she would have prevailed or fared better in the underlying case. *Formyduval v. Britt*, 177 N.C. App. 654, 658 (2006).

The denial of Mr. Sack's motion to dismiss does not change Capitol City's burden "to prove the viability and likelihood of success of the underlying case as part of the present malpractice claim," *Hummer*, 157 N.C. App. at 66, nor does it impact the methods through which Mr. Sack can defend the legal malpractice claim brought against him. The merits of and damages resulting from the underlying breach-of-contract case—even if the damages include only litigation costs—must be decided before any legal malpractice is determined. *See Kearns*, 144 N.C. App. at 208-09. The trial court can bifurcate the cases, trying the underlying case to a conclusion first and then, if necessary, trying the malpractice action. *See id.* (affirming the trial court's decision to bifurcate the trial of the underlying personal injury action from the legal malpractice action, noting that "the trying of both cases at once would likely have prejudiced the [legal malpractice] defendants in defending themselves"); *see also, e.g.*, *McMurty v. Wiseman*, 237 F.R.D. 167, 167 (W.D. Ky. 2006) (allowing plaintiff's motion to bifurcate: "[A]biding by the 'case within a case' format for legal malpractice actions, the underlying claims for fraud, negligence and negligent misrepresentation against [the original defendant] shall proceed first, followed by the professional negligence case against the [legal malpractice] [d]efendants for their alleged legal malpractice."). Accordingly, Mr. Sack has failed to show that his "right to defend a legal malpractice case using the 'case within a case' method of proof" is a substantial right that would be lost or jeopardized absent immediate appeal of the trial court's order denying is his motion to dismiss.

## B. Inconsistent verdicts

"The right to avoid one trial on [a] disputed issue[] is not normally a substantial right that would allow an interlocutory appeal. . . ." *Green v. Duke Power Co.*, 305 N.C. 603, 606 (1982) (citation omitted). A party's right to avoid a risk of receiving inconsistent verdicts may, however, constitute a substantial right. *Woody v. Vickrey*, 276 N.C. App. 427, 434 (2021). A risk of inconsistent verdicts means that there is "a risk that different fact-finders would reach irreconcilable results when examining the same factual issues a second time." *Denney v. Wardson Constr., Inc.*, 264 N.C. App. 15, 19 (2019) (citation omitted). To show that a trial court's order affects a substantial right based on a risk of inconsistent verdicts, the appellant must show "that (1) the same factual issues would be present in both trials and (2) the possibility of inconsistent verdicts on those issues exists." *N.C. Dep't of Transp.*, 119 N.C. App. at 736 (citation omitted).

Here, Mr. Sack's argument is not that he risks inconsistent verdicts before two different juries, but is instead that one jury would reach an internally inconsistent verdict, finding for Capitol City on both claims. But a jury's finding for Capitol City on both claims is not necessarily inconsistent. Mr. Sack's alleged malpractice does not stem from his representation of Capitol City in its breach-of-contract action against Starlight; it stems from Mr. Sack's alleged failure to properly prepare the purchase agreement. A finding for Capitol City in its breach-of-contract action against Starlight may not absolve Mr. Sack from legal malpractice liability where the

alleged malpractice *resulted in* the breach-of-contract action, causing damages in the form of litigation and attorney's fees. Furthermore, to the extent a jury's finding for Capitol City on both claims is inconsistent, the appropriate way to address an inconsistency would be through post-judgment motions. *See* N.C. Gen. Stat. §§ 1A-1, Rule 50(b), Rule 59(a) (2025).

Accordingly, Mr. Sack has failed to show that he has a right "to avoid the risk of inconsistent verdicts" that would be lost or jeopardized if the trial court's order denying his motion to dismiss is not immediately appealed.

Mr. Sack has filed a petition for writ of certiorari, asking this Court to issue a writ of certiorari and address the merits of this appeal, should we determine we have no jurisdiction. In our discretion, we deny the petition for a writ of certiorari. *See* N.C. R. App. P. 21(a).

### III. Conclusion

For the reasons stated herein, Mr. Sack has failed to show the interlocutory order denying his motion to dismiss is immediately appealable. We thus dismiss his appeal for lack of subject matter jurisdiction. We deny Mr. Sack's petition for writ of certiorari.

DISMISSED.

Judges STROUD and GRIFFIN concur.